# Exhibit A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**FILED**
2022 JUN 23 10:23 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 22-2-09535-1 SEA

IN THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| SARA JANE BUSH; BLAIR VEAKINS; TOULLA HADJIGEORGIOU; and GEORGE HADJIGEORGIOU, | **NO.** |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| THE BOEING COMPANY, | |
| Defendants. | |

Plaintiffs SARA JANE BUSH, BLAIR VEAKINS, TOULLA HADJIGEORGIOU, and GEORGE HADJIGEORGIOU, by and through their attorney, DAVID P. ROOSA of FREIDMAN RUBIN PLLP, file this Complaint against the above-named Defendant The Boeing Company (hereinafter, "Defendant" or "Boeing") and state as follows:

## **INTRODUCTION**

1.      This products liability, personal injury action was first commenced by these same Plaintiffs against Boeing in the Circuit Court of Cook County, Illinois, on March 24, 2021.

2.      On August 20, 2021, Boeing moved for dismissal of this case on grounds of *forum non conveniens*.  *See* Ex. A, Boeing Mtn. to Dismiss and Declarations of Bowen and Rosencranz.

COMPLAINT – Page 1

FRIEDMAN | RUBIN PLLP
1109 – 1st Avenue, Suite 501
Seattle, WA  98101
(206) 501-4446

3.      Boeing's motion and accompanying declarations argued that Washington is a more convenient forum for this action.  *See generally* Ex. A.

4.      Specifically, Boeing argued that "the headquarters of Boeing Commercial Airplanes ("BCA") has always remained in Washington and Boeing continues to maintain extensive facilities in Seattle and the surrounding areas," *see* Ex. A, Bowen Decl., at ¶ 6, and that King County, Washington "encompasses many of Boeing's relevant Washington facilities" relating to commercial aircraft production and manufacture.  *See* Ex. A, Boeing Mtn., at *13.

5.      On January 4, 2022, over Plaintiffs' opposition, the Cook County trial court agreed with Boeing and entered a Memorandum Opinion and Order granting dismissal under Illinois Supreme Court Rule 187(c)(2).  *See* Exhibit B, Mem. Op. & Order, dated Jan. 4, 2022.

6.      Under Rule 187(c)(2), Plaintiffs were required to file this action here in the state of Washington within six months of the dismissal and Boeing is now required to accept service and waive any statute of limitations defense otherwise available here in Washington.  *See* Exhibit A, Rosencranz Decl., at ¶ 23.

7.      This Complaint follows.

## PARTIES

8.      Sara Jane Bush is a citizen of the United Kingdom, residing in Norfolk, England.

9.      Blair Veakins is a citizen of the United Kingdom, residing in Norfolk, England.

10.      Toulla Hadjigeorgiou is a citizen of the United Kingdom, residing in Herts, England.

11.      George Hadjigeorgiou is a citizen of the United Kingdom, residing in Herts, England.

12.      Boeing is a Delaware corporation with its corporate headquarters in either Chicago, Illinois and / or Arlington, Virginia.

COMPLAINT – Page 2

## JURISDICTION AND VENUE

13.     By Boeing's own admission, it conducts "extensive" operations in the state of Washington relevant to the claims in this case, *see* Ex. A, Bowen Decl., at ¶ 6, and so personal jurisdiction exists here pursuant to Wash. Rev. Code § 4.28.185(1).

14.     By Boeing's own admission, King County "encompasses many of Boeing's relevant Washington facilities," *see* Ex. A, Boeing Mtn., at *13, and so venue is proper in this county pursuant to Wash. Rev. Code § 4.12.020(3).

## GENERAL BACKGROUND: TOXIC CABIN AIR INCIDENTS

15.     At all times relevant to this complaint, Boeing was engaged in the business of designing, manufacturing, assembling, testing, servicing, marketing, promoting, leasing and selling commercial aircraft as well as providing information and warnings about such aircraft, including the aircraft at issue.

16.     The facts of this case highlight a previously hidden and "dirty little secret" of the airline industry: air on Boeing's commercial aircraft (with the exception of the Boeing 787 Dreamliner) can become contaminated and injure flight crew and passengers. Cabin air comes in through the aircraft's engines before entering the cabin and cockpit. This is known as a "bleed air" system because outside air is pulled into and then "bled" off - the airplane's engines. The air can become contaminated by heated jet engine oil, hydraulic fluid, jet fuel and the toxic byproducts of such chemicals.

17.     Contaminated air contains toxic chemicals including, but are not limited to, neurotoxins such as organophosphates. Inhaling contaminated cabin air can cause short-term or transient symptoms as well as permanent and serious personal injury.

/////

COMPLAINT – Page 3

FRIEDMAN | RUBIN PLLP
1109 – 1st Avenue, Suite 501
Seattle, WA  98101
(206) 501-4446

18.     Contaminated air events can also cause serious and potentially catastrophic safety issues. Boeing has known of contaminated air events for decades and is aware that such events can cause flight crew, pilots and passengers to become ill or incapacitated.

19.     By 2007, even Boeing's senior engineers were frustrated with Boeing's refusal to address this safety issue. Senior Boeing engineer George Bates wrote, when commenting on Boeing's utter lack of effort in addressing toxic cabin air events on its airplanes: "*Bottom line is I think we are looking for a tombstone before anyone with any horsepower is going to take interest*."

20.     The tombstone Mr. Bates predicted came in 2012 with the death of a British Airways pilot, Richard Westgate. Post-mortem testing of Mr. Westgate's blood and tissue showed elevated autoantibody markers, indicative of neural degeneration. Published medical articles about Mr. Westgate's death confirm that he suffered a nervous system injury consistent with organophosphate-induced neurotoxicity. Duke University Professor Abou-Donia noted that Westgate's injury was "one of the worst cases of organophosphate [OP] poisoning [he had] come across."

21.     Boeing refused to acknowledge that Richard Westgate's death was related to his exposure to contaminated cabin cockpit air and continued to misrepresent the facts and details of his death to the flying public and British Airways flight attendants and pilots.

22.     Despite Mr. Westgate's death, Boeing refused to take any remedial action. Boeing has failed to rectify its flawed and defective bleed air design. Boeing has failed to design, install, implement or provide sensors or alarms to notify the flight crew about contaminated air events so action can be taken to reduce or minimize exposure. Boeing has also failed to design, implement, retrofit or install an air filter or converter into the bleed air system to remove, reduce or mitigate

FRIEDMAN | RUBIN PLLP
1109 – 1st Avenue, Suite 501
Seattle, WA  98101
(206) 501-4446

the toxins. Boeing has also failed to provide adequate warnings or training about the dangers of contaminated air events. To this day, Boeing has not made safety concerns about contaminated air events a priority and has instead put profits over the safety of the flying public and flight crews.

## THE INSTANT TOXIC CABIN AIR EVENT: NOVEMBER 25, 2019

23.     On November 25, 2019, Plaintiffs Sara Jane Bush and Blair Veakins were working as flight attendants onboard a Boeing model 747 aircraft, tail number G-BYGB ("subject aircraft"), operated by British Airways as Flight #174 ("the flight"), which was intended to depart from JFK Airport in New York, bound for London Heathrow Airport. Plaintiffs Toulla and George Hadjigeorgiou were passengers on the plane seated in the first-class cabin.

24.     The subject aircraft was designed and manufactured by Boeing in the State of Washington.

25.     While the plane was moving away from the terminal and before take-off, there was a contaminated air event onboard. Flight crew and passengers reported a strange, acrid smell, and a number of the flight crew and several passengers became ill.

26.     The captain aborted take-off and instead returned to the terminal. Several flight attendants, including Plaintiffs Sara Jane Bush and Blair Veakins, as well as passengers, including Plaintiffs Toulla and George Hadjigeorgiou, were taken off the plane because of their injuries.

27.     That evening and the next day, Plaintiffs received medical evaluation and treatment for their injuries.

/////

FRIEDMAN | RUBIN PLLP
1109 – 1ˢᵗ Avenue, Suite 501
Seattle, WA  98101
(206) 501-4446

28.     Due to their exposure to contaminated cabin air, Plaintiffs suffered, and continue to suffer, short-term and long-term health effects including nausea, confusion, pain, fatigue and exhaustion, balance problems, decreased motor skills, neuropathy as well as numbness and tingling in extremities, joint and muscle pain, tremors, dizziness, vertigo, shortness of breath, problems sleeping, headaches, memory loss, trouble concentrating, cognitive defects, emotional distress, mental anguish, depression, anxiety and aggravation of pre-existing medical conditions.

29.     As a direct and proximate result of this event, Plaintiffs have suffered pain, suffering, mental anguish, emotional distress as well as loss of wages and wage-earning capacity in the past and in the future.

## THE HISTORY OF BOEING'S LIABILITY

30.     Boeing employs more than 165,000 people across the United States and in more than 65 countries. Boeing claims it has "one of the most diverse, talented and innovative workforces anywhere."

31.     Boeing markets itself as "the world's largest aerospace company and leading manufacturer of commercial jetliners" and claims "a long tradition of aerospace leadership and innovation" including "creating advanced technology solutions." Boeing asserts that "safety is its primary consideration."

32.     For at least sixty years, Boeing, and its predecessors, knew (or should have known) that bleed air can become contaminated and cause serious danger to the health and welfare of crew members and passengers.

33.     Boeing has been put on notice, on more than a hundred occasions, that its bleed air system airplanes are unreasonably dangerous and can cause serious acute and permanent injuries to flight crew and passengers.

FRIEDMAN | RUBIN PLLP
1109 – 1st Avenue, Suite 501
Seattle, WA  98101
(206) 501-4446

34.     Boeing has been long aware that heated engine oil and its toxic byproducts can enter the cabin air system. As early as 1953, Boeing knew the bleed air system was "increasingly subject to unacceptable contamination" and that a decontamination or filter unit was needed to "purify engine bleed air to the point where it is suitable for cabin air conditioning." Yet, to date, Boeing has still not designed, created, implemented, retrofitted or added a filter or converter to the air circulation system of the aircrafts that can safely and effectively protect crew members and passengers from contaminated air events.

35.     Boeing has known since the 1950s that air cabin contamination does not affect everyone to the same degree and some people are physiologically more susceptible to even trace amounts of contaminants.

36.     Boeing is also aware that because of the increased breathing and metabolic rate as well as increased activity of the flight crew, they are more susceptible to injury from contaminated air events.

37.     Toxic cabin air events occur on every type and model of Boeing's airplanes that employ the bleed air system of cabin ventilation.

38.     Contaminated air events occur every day. Boeing tracked over 1,100 toxic air events from 1999 to 2013 and the Defendant assessed 823 of those events as being "potential safety issues." Boeing's manager for its Air Quality Team, David Space, acknowledges that it is reasonable to expect 4.4 contaminated cabin air events (tracked back to oil or hydraulic fluid) each and every day in the United States.

/////

FRIEDMAN | RUBIN PLLP
1109 – 1st Avenue, Suite 501
Seattle, WA  98101
(206) 501-4446

39.     The adverse health effects of contaminated air events are well-documented and serious. The FAA's Office of Aerospace Medicine expert, George Day, describes contaminated air events as when "a potentially toxic environment is created by contaminated bleed air" and the FAA recognizes that exposure to contaminated air events can "result in a spectrum of adverse health effects."

40.     The organophosphate chemicals found in Boeing's jet engine compartments are highly neurotoxic, akin to sarin gas. The World Health Organization (WHO) calls the neurotoxins at issue "major hazards to human health" for which "there is no safe level of ingestion" and cautions that exposure through inhalation should be minimized.

41.     Researchers confirm that exposure to these irritating and toxic chemicals can cause "impairment of neuropsychological function" which can "become more debilitating after time, with problems of loss of cognitive function and memory problems emerging."

42.     Even Boeing acknowledges that flight attendants and passengers develop "real symptoms" from these events.

43.     Published articles acknowledge that exposure to oil fumes can cause "both acute and chronic neurological and respiratory symptoms" and can compromise flight safety. As one study noted, "a clear cause and effect relationship has been identified" between contaminated air events and the development of acute and chronic adverse effects involving the neurological and neurobehavioral systems.

44.     Harvard Professor, as well as Boeing consultant and retained expert, Jack Spengler confirms that flight crews "complain of headaches and eye, skin and upper airway irritation in the short term but go on to experience neuropsychological impairment" as well as other chronic conditions.

45.     In 2004, Boeing launched the Boeing 787 Dreamliner, a commercial aircraft that does not use a bleed air system. The Dreamliner air system eliminates the risk of engine oil decomposition products being introduced in the cabin air supply. One of the reasons Boeing developed a new air supply system for the Dreamliner was to eliminate "engine contaminants potentially entering cabin air supply- Improved Air Quality."

46.     ***Boeing has failed to investigate, study, identify or quantify the toxins present during a contaminated air event:***     As a threshold step to appropriately addressing the safety hazard of contaminated air events, Boeing needed to create a list of possible contaminants present during a cabin air event. To date, Boeing still has not finalized a list of bleed air and cabin contaminants or surrogates of interest.

47.     Boeing has never captured, documented, evaluated, assessed or analyzed a contaminated air incident in-flight. Shockingly, even today, Boeing cannot tell the public what toxins are even present during a contaminated air event or at what levels. Boeing's executive Jacob Bowen admits he has "never seen any data off of an actual airplane" during a contaminated air event. Boeing's senior engineer George Bates confirms that Boeing has "no data of air contamination during a fume or upset event." Rather, Boeing's typical investigation of a contaminated air event involves examining the airplane hours to days after the event, by which time the doors have been opened, the passengers and crew have disembarked, and the contaminated air has dissipated. Even Boeing's chemist Jean Ray agrees that "unless you're actually there monitoring" during the contaminated air incident, "there's no way to know for sure what contaminants were there during that event." So while Boeing knows it is exposing its customers to various levels of poisonous gas, Boeing has done nothing to study the levels of gas present, their varying causes, or the adverse health effects on passengers and crew.

FRIEDMAN | RUBIN PLLP
1109 – 1st Avenue, Suite 501
Seattle, WA  98101
(206) 501-4446

48.     All in-flight air samples done to date thus capture only normal flight operations. And even that data is alarming: the neurotoxin tricresyl phosphate (TCP) has been found on airplanes during even normal operation. Independent researchers confirm that, when cabin air was tested even under normal flying conditions, "significant concentrations of organophosphate neurotoxins and other noxious substances in cabin air" were found. In 2009, when investigative reporters secretly took wipe samples from inside a number of airplanes, all under normal operations, "out of 31 samples, 28 were found positive for TCP."

49.     Boeing consistently represented that it was committed to studying and gaining "a comprehensive understanding of air quality components through research and analysis." In reality, Boeing repeatedly cut or removed funding from air quality projects.

50.     **Boeing downplayed, minimized and misrepresented the true incidence rate for contaminated air events**. Boeing has repeatedly provided inaccurate or outdated incidence statistics to the traveling public and flight crews. Through these misrepresentations, Boeing encouraged complacency, deterred and distracted research efforts and impeded or prevented development and implementation of safer technologies.

51.     **Boeing failed to develop, install or implement filters or converters**. Feasible and effective filters and converters, which could remove or significantly reduce airborne toxins, have been available since 2003. The most well-tested of these is the Combined Hydrocarbon Ozone Converters (CHOC) which Boeing could have, and should have, installed on its bleed air planes. CHOC converters function similar to a filter except the CHOC captures the toxic contaminants and turns those chemicals into more benign compounds. CHOC converters are effective at reducing contaminants, thus making the bleed air system safer for passengers and crew.

/////

FRIEDMAN | RUBIN PLLP
1109 – 1st Avenue, Suite 501
Seattle, WA  98101
(206) 501-4446

52.     Adding CHOC converters to Boeing planes would be easy, as the CHOC slides right into the same slot in the bleed air system as the existing ozone converter. The CHOC unit actually fits into "the same envelope space as the ozone converter" and is essentially a drop-in replacement for the ozone converter which provides advancement "at little to no extra cost." The CHOC has the same durable, lightweight design and same long-lasting, high efficiency as the currently utilized ozone converter. As Boeing's lead engineer and FAA designated representative Jane Vitkuske noted, the benefits of the CHOC technology include "minimal cost" and little "weight impact."

53.     Boeing's main competitor, Airbus, started installing CHOC converters on Airbus planes in 2006 to 2007. Boeing has still not adopted or implemented this safer alternative.

54.     Boeing consistently and repeatedly refused to allocate adequate resources for the research, development and installation of converters or sensors. Indeed, Boeing repeatedly cut or eliminated budgets for such research and development. On multiple occasions, Boeing put entire air quality projects "on hold" or delayed approving funding by months and even years.

55.     Boeing has now opted to install CHOC converters on some of its bleed airplanes, starting in the 2021 timeframe, a decision that comes too late to save the Plaintiff.

56.     ***Boeing failed to design, install or implement sensors***. Boeing's planes have more than fifty sensors onboard and many of them trigger warnings for the pilots in-flight. But Boeing has never installed a sensor to warn of a contaminated air event. This is because Boeing's management refused to fund the research and development efforts necessary to develop and implement such technology.

/////

FRIEDMAN | RUBIN PLLP
1109 – 1st Avenue, Suite 501
Seattle, WA  98101
(206) 501-4446

57.     A pilot's ability to detect a contaminated air event in-flight is important because, in the cockpit, there is a simple switch that allows the pilot to shut off inflowing air from either engine. If the pilot knows contaminants are entering the air supply because of issues from a specific engine, with just a flip of a switch, the pilot can shut down the air flow on that side of the plane and protect passengers and crew from the toxins.

58.     While pilots have access to pure oxygen masks in the cockpit, and pilots must put them on during contaminated air events to prevent incapacitation, there is no such protection available for passengers and flight attendants. The masks that fall from the overhead compartment in the cabin allow for only 4-15 minutes of oxygen. Sensors are thus important to provide an early warning so pilots can block contaminated air from entering the cabin.

59.     Pilots want sensors as they consider contaminated air events to be "safety" issues and do not want "passengers used as guinea pigs in seats."  The Airline Pilots Association notes that the development and installation of sensors for guarding against toxic cabin air events is "[t]he single most important safety item" for pilots.

60.     The flight crew unions also want sensors. The FAA wants sensors. Industry organizations such as ASHRAE have demanded sensors. Independent scholarly organizations like the National Research Council recommend sensors.

61.     Although many sensors have been developed and approved for use in flight, Boeing steadfastly refuses to install them. Boeing's engineers admit that one reason for Boeing's reticence is that Boeing fears the information captured by those sensors (*i.e.* exactly what toxins were actually present during an event and at what levels) could be used against Boeing in litigation. To protect itself, Boeing is willing to risk the safety of passengers and flight crew.

/////

FRIEDMAN | RUBIN PLLP
1109 – 1ˢᵗ Avenue, Suite 501
Seattle, WA  98101
(206) 501-4446

62.     Boeing has long known that its bleed air system is defectively designed. Boeing is aware that safety measures exist or could be developed to mitigate or eliminate the danger. Boeing has made affirmative and intentional decisions *not* to investigate, develop or employ those measures.

63.     Boeing has ample resources to investigate, research, develop and implement safer alternatives. In Boeing's 2018 Annual Report, Defendant reported annual revenue of $101.1 billion. Despite these resources, the Boeing aircraft at issue had a defectively designed bleed air system, was not equipped with appropriate converters or filters to remove air contaminants and did not have a sensor to warn the flight crew. Further, Boeing provided the flight crew with no training on how to handle a contaminated air incident or how to isolate the source of the air contamination so such contamination could be reduced, avoided or stopped.

64.     Boeing knew that cabin air could become contaminated, knew that such contamination could cause health problems and knew that safer alternatives were available that were technologically available and economically feasible. Yet Boeing did not redesign or retrofit the subject aircraft to eliminate or reduce these hazardous events.

65.     Rather than admit the truth about air cabin contamination, Boeing instead deliberately misrepresented the safety of its aircraft. In 1995, for example, Boeing represented at the Aeromedical Medical Association annual meeting that the ECS or Environmental Control System of "today's jetliner is carefully engineered to provide superior cabin air quality."

66.     By 1996, Boeing knew that airlines had "expressed concern with bleed air contaminants." Rather than be truthful, Boeing instead told the airlines that the "air quality contaminants meet health and safety guidelines" and acute symptoms were caused by warmer temperatures and "control of the heat in the cabin," rather than toxins.

COMPLAINT – Page 13

67.     In 2000, Boeing provided affirmative representations to United Airlines flight crew in an article called "Partners in Safety: Cabin Air Quality." Boeing reassured United flight attendants that their health was "always a top priority" and that symptoms experienced by flight attendants such as "fatigue, headaches, dizziness, light-headedness, nausea, sore throat and illness" was often mistakenly attributed to cabin air quality but flight crew should instead look to other causal factors such as altitude, jet lag, turbulence, dehydration and stress. Boeing had a prime opportunity to educate United flight crew about this safety hazard and, instead, Boeing misrepresented, downplayed and minimized the danger.

68.     Boeing consistently represented that cabin air quality studies did not indicate that contaminants were affecting cabin air quality. Boeing thus encouraged airlines and crew to look at "multiple factors" as the cause of poor cabin air quality. Further, Boeing reassured flight crew that there were "no additional precautions" that could be taken to improve air quality. In reality, Boeing could have, and should have, installed converters and sensors in its bleed air system planes.

69.     Boeing executives have affirmatively represented that Boeing aircraft are safe. For example, in 2011, Boeing engineer David Space discussed cabin air quality with various airlines and stated that Boeing was committed to providing a "safe, healthy, flying environment." Boeing also represented that its air delivery system "is carefully engineered to provide superior cabin air quality."

70.     By reason of Boeing's decisions, the subject flight attendant crew were exposed to contaminated bleed air, the environmental control system on the subject aircraft lacked converters or filters which would have reduced or eliminated the toxic fumes, and there was no sensor or warning on the subject aircraft to warn the flight crew so remediation action could be taken.

COMPLAINT – Page 14

71.     By reason of Boeing's decisions, the subject flight attendants were not properly warned of the health dangers of contaminated cabin air and were ill-equipped to respond to this incident.

72.     Boeing knew of the defects in the subject aircraft, knew that because of such defects the cabin air was not free from harmful or hazardous concentrations of contaminants, was on notice that the defects were likely to cause injury yet failed to adequately warn or instruct on the aircraft defects, failed to remedy the known defect in the subject aircraft, failed to discover the dangerous conditions when such could have been discovered and/or failed to take affirmative action to avoid injury to Plaintiffs and others.

## COUNT I: DESIGN DEFECT—STRICT LIABILITY
### (Wash. Rev. Code § 7.72.030(2))

73.     Plaintiffs re-allege all previous paragraphs as if set forth verbatim herein.

74.     Boeing is the product manufacturer of the subject aircraft.

75.     At the time Boeing manufactured the subject aircraft, the subject aircraft was defectively designed and not reasonably safe in construction because:

    a.  It was unsafe to an extent beyond that which would be contemplated by the ordinary consumer; and

    b.  The likelihood the subject aircraft would cause Plaintiffs' harm, or similar harms, and the seriousness of those harms, outweighed Boeing's burden to design a product that would have prevented those harms and any adverse effect a practical, feasible alternative would have on the product's usefulness.

76.     At the time Boeing manufactured the subject aircraft, the subject aircraft was defectively designed and not reasonably safe in construction in the following respects:

    a.  The subject aircraft's ventilation system allowed bleed air, which can become contaminated with dangerous toxins, to enter the cabin and cockpit air.

COMPLAINT – Page 15

b. The subject aircraft lacked adequate air quality monitors, sensors or alarms.

c. The subject aircraft provided no safeguards or systems so the flight crew could identify the source of the contaminated air or mitigate or prevent contamination of the cabin air.

d. The subject aircraft lacked adequate or appropriate converters or filters to reduce, remove or eliminate bleed air contamination.

77. By reason of the foregoing, the subject aircraft was unreasonably dangerous and defective, and Boeing is strictly liable for the damages sustained by the Plaintiffs.

78. As a direct and proximate result of Boeing's foregoing design defects, Plaintiffs suffered, and continue to suffer, acute, chronic, and long-term health effects from their exposure to contaminated cabin air and they claim damages for: physical pain and suffering, emotional distress, mental anguish, loss of normal life, disfigurement, and economic damages, including but not necessarily limited to medical expenses, rehabilitative expenses, past and future lost wages, and loss of wage-earning capacity.

## COUNT II: DESIGN DEFECT—NEGLIGENCE
### *(Wash. Rev. Code § 7.72.030(1)(a))*

79. Plaintiffs re-allege all previous paragraphs as if set forth herein verbatim.

80. Boeing is the product manufacturer of the subject aircraft.

81. At the time Boeing manufactured the subject aircraft, the subject aircraft was defectively designed and not reasonably safe in construction because:

a. It was unsafe to an extent beyond that which would be contemplated by the ordinary consumer; and

b. The likelihood the subject aircraft would cause Plaintiffs' harm, or similar harms, and the seriousness of those harms, outweighed Boeing's burden to design a product that would have prevented those harms and any adverse effect a practical, feasible alternative would have on the product's usefulness.

FRIEDMAN | RUBIN PLLP
1109 – 1st Avenue, Suite 501
Seattle, WA  98101
(206) 501-4446

82.     At the time Boeing manufactured the subject aircraft, the subject aircraft was defectively designed and not reasonably safe in construction in the following respects:

    a.    The subject aircraft's ventilation system allowed bleed air, which can become contaminated with dangerous toxins, to enter the cabin and cockpit air.

    b.    The subject aircraft lacked adequate air quality monitors, sensors or alarms.

    c.    The subject aircraft provided no safeguards or systems so the flight crew could identify the source of the contaminated air or mitigate or prevent contamination of the cabin air.

    d.    The subject aircraft lacked adequate or appropriate converters or filters to reduce, remove or eliminate bleed air contamination.

83.     By reason of the foregoing, the subject aircraft was unreasonably dangerous and defective, and Boeing is strictly liable for the damages sustained by the Plaintiffs.

84.     As a direct and proximate result of Boeing's foregoing negligence, Plaintiffs suffered, and continue to suffer, acute, chronic, and long-term health effects from their exposure to contaminated cabin air and they claim damages for: physical pain and suffering, emotional distress, mental anguish, loss of normal life, disfigurement, and economic damages, including but not necessarily limited to medical expenses, rehabilitative expenses, past and future lost wages, and loss of wage-earning capacity.

## COUNT III: FAILURE TO WARN—NEGLIGENCE
### (Wash. Rev. Code § 7.72.030(1)(b))

85.     Plaintiffs re-allege all previous paragraphs as if set forth herein verbatim.

86.     Boeing is the product manufacturer of the subject aircraft.

/////

FRIEDMAN | RUBIN PLLP
1109 – 1st Avenue, Suite 501
Seattle, WA  98101
(206) 501-4446

87.     At the time Boeing manufactured the subject aircraft, the likelihood that the subject aircraft would cause Plaintiffs' harms or similar harms, and the seriousness of those harms, rendered any warnings or instructions of Boeing inadequate, and Boeing could have provided warnings or instructions relating to the risks and dangers set forth herein.

88.     Following Boeing's manufacturing of the subject aircraft, Boeing learned or reasonably should have learned about the risks and dangers set forth herein, and Boeing had a duty to act with regard to issuing warnings or instructions relating to such risks and dangers.

89.     Boeing failed to adequately warn of the danger of toxic cabin air and/or failed to adequately instruct on the proper use of its aircraft to avoid cabin air contamination in one of more of the following respects:

a.  The subject aircraft lacked proper warnings regarding the potential of the air supply system to become contaminated.

b.  The subject aircraft lacked proper warnings regarding the identification or detection of contaminated air.

c.  The subject aircraft lacked proper warnings regarding the health dangers of exposure to contaminated air.

d.  Boeing failed to adequately warn or instruct on how to respond, contain or reduce the danger of contaminated air events.

90.     By reason of the foregoing, the subject aircraft was unreasonably dangerous and defective, and Boeing is strictly liable for the damages sustained by the Plaintiffs.

91.     As a direct and proximate result of Boeing's foregoing failure to warn, Plaintiffs suffered, and continue to suffer, acute, chronic, and long-term health effects from their exposure to contaminated cabin air and they claim damages for: physical pain and suffering, emotional

/////

COMPLAINT – Page 18

FRIEDMAN | RUBIN PLLP
1109 – 1st Avenue, Suite 501
Seattle, WA  98101
(206) 501-4446

distress, mental anguish, loss of normal life, disfigurement, and economic damages, including but not necessarily limited to medical expenses, rehabilitative expenses, past and future lost wages, and loss of wage-earning capacity.

## COUNT IV: NEGLIGENCE

92.    Plaintiffs re-allege all previous paragraphs as if set forth herein verbatim.

93.    At all times relevant hereto, Boeing owed a duty to the Plaintiffs to use reasonable care in designing, manufacturing, assembling, testing, maintaining, servicing, selling, marketing, promoting and providing warnings or instructions about the subject aircraft so as not to cause Plaintiffs severe personal injuries and pain and suffering.

94.    Boeing negligently breached its duty of care owed to the Plaintiffs through one or more of the following negligent acts and omissions, when Boeing:

a.    Negligently designed, manufactured, assembled and sold the subject aircraft such that its ventilation system allowed contaminated bleed air to enter the breathing zone of the aircraft.

b.    Negligently designed, manufactured, assembled and sold the subject aircraft without an adequate or appropriate air quality monitor, sensor or alarm to detect bleed air contamination, to allow the flight crew to identify the source of such contamination and/or permit the flight crew to mitigate, reduce or prevent fume events.

c.    Negligently designed, manufactured, assembled and sold the subject aircraft without adequate or appropriate converters or filters to protect cabin air from contamination.

d.    Negligently designed, manufactured, assembled and sold the subject aircraft without proper warnings or instructions regarding the potential of the air supply system to become contaminated or the danger of exposure to such contaminated air.

e.    Negligently designed, manufactured, assembled and sold the subject aircraft without knowing the chemical composition of heated aviation jet engine lubricating oil or hydraulic fluid or the byproducts of such as well as the toxicity of these toxins.

COMPLAINT – Page 19

FRIEDMAN | RUBIN PLLP
1109 – 1st Avenue, Suite 501
Seattle, WA  98101
(206) 501-4446

f. Negligently designed, manufactured, assembled and sold the subject aircraft without knowing what chemicals or byproducts are created when aviation jet engine lubricating oil or hydraulic fluid is heated to temperatures consistent with those experienced in the engines.

g. Negligently designed, manufactured, assembled and sold the subject aircraft without properly testing heated aviation jet engine lubricating oil or hydraulic fluid to fully understand the toxic chemicals and byproducts of such.

h. Negligently designed, manufactured, assembled and sold the subject aircraft without knowing the quality of the bleed cabin air.

i. Negligently failed to incorporate a proper and effective environmental control system or air supply on the subject aircraft.

j. Negligently failed to properly test the subject aircraft before selling or distributing it.

k. Negligently failed to adequately maintain, service, retrofit and/or inspect the subject aircraft or add the needed safer alternatives.

l. Negligently represented, promoted and marketed its aircraft as being safe and failed to provide adequate warnings and instructions about its aircraft.

m. Was otherwise negligent and careless.

95.     Boeing owed a duty to adequately warn and instruct about the dangers of its aircraft of which it knew, or, in the exercise of ordinary care, should have known, at the time the product left Boeing's control.

96.     Boeing negligently failed to warn of the defective and unreasonably dangerous conditions of the subject aircraft.

97.     Boeing misrepresented the safety of its aircraft and the dangers of air cabin contamination.

98.     As a direct and proximate result of Boeing's foregoing negligence, Plaintiffs suffered, and continue to suffer, acute, chronic, and long-term health effects from their exposure to contaminated cabin air, and they claim damages for: physical pain and suffering, emotional

COMPLAINT – Page 20

FRIEDMAN | RUBIN PLLP
1109 – 1st Avenue, Suite 501
Seattle, WA  98101
(206) 501-4446

distress, mental anguish, loss of normal life, disfigurement, and economic damages, including but not necessarily limited to medical expenses, rehabilitative expenses, past and future lost wages, and loss of wage-earning capacity.

## PRAYER FOR RELIEF

Plaintiffs pray for judgment against Defendant as follows:

1.      A judgment of liability, jointly and severally, against Defendant for the tortious conduct herein;

2.      A full award of economic and non-economic damages suffered by Plaintiffs;

3.      An award of taxable costs;

4.      An award of reasonable attorneys' fees;

5.      Prejudgment interest on such economic and non-economic damages as the law allows, at the maximum allowable rate; and

6.      Such further relief as is just and equitable.

DATED this 21st of June, 2022.

David P. Roosa, WSBA #45266
FRIEDMAN|RUBIN PLLP
1109 – 1st Avenue, Suite 501
Seattle, WA 98101
Phone: (206) 501-4446
Fax: (206) 623-0794
droosa@friedmanrubin.com
*Attorney for Plaintiffs*

COMPLAINT – Page 21

Exhibit A

FILED DATE: 8/20/2021 1:25 PM   2021L003160

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

FILED
8/20/2021 1:25 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021L003160

SARA JANE BUSH, BLAIR
VEAKINS, TOULLA
HADJIGEORGIOU, and GEORGE
HADJIGEORGIOU,

     Plaintiffs,

  v.

THE BOEING COMPANY,

     Defendant.

No. 2021 L 003160

Hon. John H. Ehrlich

**DEFENDANT THE BOEING COMPANY'S MOTION TO DISMISS**
**UNDER THE DOCTRINE OF *FORUM NON CONVENIENS***

FILED DATE: 8/20/2021 1:25 PM   2021L003160

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    BACKGROUND .................................................................................. 2

    A.    Plaintiffs and their claims. ......................................................... 2

    B.    Plaintiffs' identification of witnesses in discovery. ................... 3

    C.    The Boeing Company and its operations and location. ............... 4

        1.    Boeing's founding and commercial aircraft operations are in Washington. ..................................................... 4

        2.    Washington is the hub for Boeing's design and manufacturing activities relating to the model 747................... 5

        3.    Washington was and remains the hub for Boeing's aircraft safety, research, and development activities relating to cabin air. ....................................................................................... 5

III.    ARGUMENT ...................................................................................... 7

    A.    Plaintiffs' decision to file in Illinois receives little deference. ........................... 8

    B.    The private interest factors strongly favor Washington over Illinois. ............... 9

        1.    Illinois is an inconvenient forum, and Washington is the most convenient forum for all parties. ....................................... 9

        2.    Accessing discovery will be easier in Washington. .............................. 10

        3.    Conducting trial will be easier and more expeditious in Washington. ......................................................................... 10

    C.    The Public Interest Factors Strongly Favor Washington Over Illinois. ...................................................................................... 11

        1.    Washington has a stronger interest in deciding the case...................... 11

        2.    The burden associated with trial should not fall on the residents of Illinois.......................................................... 12

        3.    Keeping this case on the Circuit Court's congested docket would impose unnecessary administrative difficulties. ........................ 12

IV.    CONCLUSION................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

FILED DATE: 8/20/2021 1:25 PM   2021L003160

CASES

*Abboud v. The Boeing Co.*,
No. 17 L 8269 (Cook County Cir. Ct., Ill. Sept. 26, 2018).......................................................9

*Arik v. The Boeing Co.*,
2011 IL App (1st) 100750-U (Ill. App. Ct. 1st Dist. 2012) ....................................................9

*Berbig v. Sears Roebuck & Co.*,
378 Ill. App. 3d 185 (1st Dist. 2007) ......................................................................................8

*Bradford v. Alaska Airlines Inc., et al.*,
No. 98-2-15033-5 (King Cty Sup. Ct.) .....................................................................................8

*Brown v. Cottrell*,
374 Ill. App. 3d 525 (2007) ......................................................................................................9

*Brummett v. Wepfer Marine, Inc.*,
111 Ill. 2d 495 (1986) ............................................................................................................14

*Certain Underwriters at Lloyd's, London v. Illinois Cent. R.R. Co.*,
329 Ill. App. 3d 189 (2d Dist. 2002) ........................................................................................8

*Claisse v. Boeing Co.*,
2010 WL 3861073 (N.D. Ill. Sept. 28, 2010) ..........................................................................9

*Clerides v. Boeing Co.*,
534 F.3d 623 (7th Cir. 2008) ...................................................................................................8

*Dawdy v. Union Pac. R.R.*,
207 Ill. 2d 167 (2003) ..........................................................................................................8, 9

*Espinosa v. Norfolk & W. R. Co.*,
86 Ill. 2d 111 (1981) ..............................................................................................................13

*Fennell v. Ill. Cent. R.R. Co.*,
2012 IL 113812 (2012) ................................................................................................. passim

*Finberg v. Boeing Company*,
No. 03-cv-00653-RBL (W.D. Wash.)........................................................................................7

*First Nat'l Bank v. Guerine*,
198 Ill. 2d 511 (2002) .................................................................................................7, 10, 11

FILED DATE: 8/20/2021 1:25 PM   2021L003160

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Gridley v. State Farm Mutual Automobile Insurance Co.*,
217 Ill. 2d 158 (2005) .................................................................................. passim

*Hale v. Odman*,
2018 IL App. (1st), 180280...................................................................................9

*Hansen-Runge v. Ill. Cent. R.R. Co.*,
2020 Il App (1st) 190383 ......................................................................................8

*In re Air Crash Disaster over Makassar Strait, Sulawesi*,
2011 WL 91037 (N.D. Ill. Jan. 11, 2011) ...........................................................8

*Kordoglanian v. Yannoulis*,
227 Ill. App. 3d 898 (1st Dist. 1992) ...................................................................1

*Lambert v. Goodyear Tire & Rubber Co.*,
332 Ill. App. 3d 373 (1st Dist. 2002) .................................................................12

*People ex rel. Compagnie Nationale Air France v. Giliberto*,
74 Ill. 2d 90 (1978) .....................................................................................12, 14

*Vivas v. The Boeing Co.*,
392 Ill. App. 3d 644 (1st Dist. 2009) ...................................................................9

*Wilder Chiropractic, Inc. v. State Farm Fire & Cas. Co.*,
2014 IL App (2d) 130781 .....................................................................................7

*Williams v. McDonnell Douglas Corp., et al.*,
No. 09-2-15315-9 (King Cty Sup. Ct.) .................................................................8

FILED DATE: 8/20/2021 1:25 PM   2021L003160

## I.    INTRODUCTION

This case has no connection to Illinois. Plaintiffs are not Illinois residents, they do not claim injury in Illinois, and they have not identified any relevant witnesses in Illinois. The event they say caused their injury took place on a flight that did not depart from, was never bound for, and did not land in Illinois. And in any case, their product defect claims in this alleged toxic exposure case are not about "how a product's useful life ended, but how it began," which was not in Illinois. *See* Ex. 2, *Hatleberg v. The Boeing Co.*, No. 18 L 1816, Order at 10, (Cook County Cir. Ct., Ill. Nov. 13, 2019) (J. Ehrlich).[1] The central allegation in this case is that the bleed air system on the Boeing model 747 aircraft is defectively designed and produced a "contaminated air event" that allegedly caused two flight attendants and two passengers to suffer lasting health problems. These claims relate to conduct that occurred in Washington, involve individuals in Washington, and relate to a plane designed, assembled, and delivered in Washington. No other forum—and certainly not Illinois—has anywhere near the factual connection to the case that Washington has. The Illinois Supreme Court "has consistently favored rulings granting dismissals based upon forum non conveniens where the cause of action occurred outside the state and no individual plaintiff was an Illinois resident." *Kordoglanian v. Yannoulis*, 227 Ill. App. 3d 898, 903 (1st Dist. 1992). That is exactly the case here.

Boeing designed, assembled, and tested the bleed air system in Washington and delivered the particular plane at issue to British Airways in 1999, at a facility in Washington. Washington has long been and remains the main location of Boeing's commercial aircraft production facilities and of the Boeing employees most familiar with the design and function of the model 747 aircraft's air distribution system. Washington also was and is home to the personnel and leadership with responsibility for the research and development of air quality technology, like the converters and sensors that Plaintiffs claim Boeing should have developed and installed. In other

---

[1] Exhibits refer to those attached to the Declaration of Todd Rosencrans in Support of Defendant The Boeing's Company's Motion to Dismiss Under the Doctrine of *Forum Non Conveniens*.

FILED DATE: 8/20/2021 1:25 PM   2021L003160

words, everything that Plaintiffs accuse Boeing of doing or failing to do centers on Washington. Plaintiffs' allegations have no connection to Illinois.

Nonetheless, Plaintiffs filed suit in Illinois—purportedly because Boeing moved its corporate headquarters here in 2001. But the headquarters move occurred years after Boeing delivered the subject plane, and more than three decades after the 747 was designed. The Illinois Supreme Court has repeatedly held that a defendant's in-state corporate headquarters or offices do not nullify the *forum non conveniens* analysis where the relevant factors favor a different forum. *E.g.*, *Fennell v. Ill. Cent. R.R. Co.*, 2012 IL 113812, ¶¶ 46–47; *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 169 (2005). Thus, as this Court has recognized, the present location of Boeing's headquarters does not make Illinois a convenient forum for every dispute, and it does not preclude dismissal when, as here, a Washington forum would be more appropriate. *See, e.g.*, Ex. 1, *Smartwings, A.S. v. The Boeing Co.*, No. 2020-L-008114, Order (Cook County Cir. Ct., Ill. Jan. 11, 2021) (J. Shelley); Ex. 2, *Hatleberg v. The Boeing Co.* Because Plaintiffs do not live in Illinois and were not injured here, their selection of Illinois as a forum receives "*far* less deference" than it otherwise would. *Fennell*, 2012 IL 113812, ¶ 26.

This case has no meaningful connection to Illinois. This Court can and should dismiss it for refiling in Washington, the home of the relevant Boeing conduct and witnesses, where Plaintiffs' claims belong.

## II.      BACKGROUND

### A.      Plaintiffs and their claims.

Plaintiffs are two British Airways flight attendants based in the United Kingdom and two U.K. passengers; all four are citizens and residents of the U.K., and none lives in Illinois. *See* Ex. 3, Compl. ¶¶ 1–4, 15. They allege they suffered injuries from a "contaminated air event" on a Boeing 747 aircraft during a November 25, 2019 flight that was scheduled to fly from New York to London. *Id.* ¶¶ 15, 17. According to Plaintiffs, a number of crew members and passengers became ill while the plane moved away from the terminal in New York before take-

FILED DATE: 8/20/2021 1:25 PM   2021L003160

off, so the pilot aborted take-off and returned to the terminal. *Id.* ¶¶ 17–18. Plaintiffs allege that

they received medical evaluation and treatment that evening and the next day. *Id.* ¶ 19. Plaintiffs

allege emotional, physical, and economic injuries (*id.* ¶¶ 20–21) and assert claims against Boeing

for strict liability, negligence, and *res ipsa loquitur* (*id.* ¶¶ 65–89).

Plaintiffs' theory is that the aircraft's "bleed air" system was unsafely designed and

permitted the cabin to become "contaminated" with "toxic" air. *Id.* ¶¶ 8–14. They contend that

Boeing has long known of risks associated with bleed air contamination but failed to research,

develop, and install converters or sensors to identify or prevent such events. *Id.* ¶¶ 38–64.

The Complaint identifies two current Boeing employees, Jacob Bowen and Jane Matera

(formerly Jane Vitkuske) (*id.* ¶¶ 39, 44), and three former Boeing employees, David Space,

George Bates, and Jean Ray (*id.* ¶¶ 11-12, 30, 39, 61), as knowledgeable about cabin air quality

and bleed air system design. All of these employees (including the former employees, based on

Boeing's records) are in Washington. Decl. of Todd Rosencrans in Supp. of The Boeing Co.'s

Mot. to Dismiss Under the Doctrine of *Forum Non Conveniens* ("Rosencrans Decl.") ¶ 17,

Ex. 12 and Table 3 (locations of Boeing witnesses identified by Plaintiffs).

The Complaint does not mention Illinois, except to identify Chicago as the location of

Boeing's corporate headquarters and to allege jurisdiction and venue in this Court. Ex. 3, Compl.

¶¶ 5-6, 22.

**B.      Plaintiffs' identification of witnesses in discovery.**

Discovery has confirmed that Plaintiffs' claims center on Boeing's activities in

Washington and lack any connection to Illinois. In their responses to Boeing's interrogatories,

for example, Plaintiffs identified the names and locations of the medical providers they saw for

their alleged injuries. *See* Ex. 5, Bush Amended Interrog. Resp., Nos. 4, 6; Ex. 7, Veakins

Amended Interrog. Resp., Nos. 4, 6; Ex. 9, T. Hadjigeorgiou Amended Interrog. Resp., Nos. 4, 6;

Ex. 11, G. Hadjigeorgiou Amended Interrog. Resp., Nos. 4, 6. None are in Illinois, confirming

that at no point have Plaintiffs received any relevant medical treatment in this state. *See*

Rosencrans Decl. ¶ 15, Table 1 (locations of Plaintiffs' medical providers).

FILED DATE: 8/20/2021 1:25 PM   2021L003160

Plaintiffs' interrogatory responses also collectively identified 48 third-party fact witnesses by name. These witnesses include representatives from British Airways Stewards and Stewardesses Association, family members, and friends. *See* Ex. 5, Bush Amended Interrog. Resp., No. 3; Ex. 7, Veakins Amended Interrog. Resp., No. 3; Ex. 9, T. Hadjigeorgiou Amended Interrog. Resp., No. 3; Ex. 11, G. Hadjigeorgiou Amended Interrog. Resp., No. 3. To the best that counsel has been able to determine, none of these individuals lives in Illinois. *See* Rosencrans Decl. ¶ 16, Table 2 (locations of Plaintiffs' third-party witnesses).

Plaintiffs also identified 89 individuals they allege are current or former Boeing employees possessing information relevant to their claims. *See* Rosencrans Decl. ¶ 17.[2] Six of these people are not and never have been Boeing employees, based on Boeing's records. *Id.* As to the remaining 83 individuals, 65 of them (78%) are based in Washington, and out of those, 33 are retired or otherwise no longer employed by Boeing. *Id.*, Ex. 12 and Table 3. The only person on the list with a current Illinois connection is David Calhoun, Boeing's current President and CEO. *Id.*[3] Mr. Calhoun assumed that position in January 2020, two years after the alleged air contamination incident and long after the plane was designed and manufactured. *Id.* He has no relevant testimony to offer in this case.

## C.   The Boeing Company and its operations and location.

### 1.   Boeing's founding and commercial aircraft operations are in Washington.

Boeing was founded in 1916 in the Puget Sound region of Washington. Decl. of Jacob Bowen in Supp. of The Boeing Co.'s Mot. to Dismiss Under the Doctrine of *Forum Non Conveniens* ("Bowen Decl.") ¶ 4. Since that time and to this day, its commercial aircraft operations—including for the model 747 aircraft—have been headquartered in Washington. *Id.* ¶¶ 3–9. Boeing maintains extensive facilities in Seattle and the surrounding areas, including the

---

[2] Boeing does not concede that all of the individuals Plaintiffs have identified are relevant witnesses.

[3] One of the 89 individuals, former Boeing employee Russ Benson, used to work in Illinois. He now resides in Washington, according to Boeing records. Rosencrans Decl. ¶ 17.

FILED DATE: 8/20/2021 1:25 PM   2021L003160

Seattle suburb of Everett, Washington. *Id.* ¶ 6. More than 55,000 Boeing employees are based in Washington today. *Id*. ¶ 10.

Boeing's commercial aircraft operation, Boeing Commercial Airplanes ("BCA"), has long been headquartered in Washington and remains concentrated there. *Id*. ¶¶ 6–7. BCA's executive leadership functions—including its President and Chief Executive Officer, its Vice President of Engineering, and its Vice President of Product Development—are all in Washington. *Id*.

In 2001, Boeing moved its worldwide corporate headquarters—but not BCA—from Seattle to Chicago. *Id*. ¶ 6. Only approximately 1,200 employees (less than 1% of Boeing's workforce) are based in Illinois today. *Id*. ¶ 10. Boeing has never operated any production facilities in Illinois. *Id*.

### 2. Washington is the hub for Boeing's design and manufacturing activities relating to the model 747.

The alleged incident that is the subject of this case involved a Boeing 747-400 model aircraft. Bowen Decl. ¶ 2. Boeing initiated the 747 program in the late 1960s, the first 747 was ordered in 1966, and the design was certified as airworthy in 1969. *Id*. ¶ 4. Since the inception of the 747 program, production of 747 aircraft has occurred at the BCA production facilities in Everett, Washington. *Id*. ¶¶ 4, 8. Indeed, in 1967 Boeing constructed its Everett production facility—the largest manufacturing building in the world—just to build the 747. *Id*. ¶ 4. Boeing's design, assembly, testing, and certification of the 747, including the design of the 747 air distribution system, all occurred in Washington. *Id*. ¶ 5. British Airways took delivery of the 747 airplane at issue on January 17, 1999, at Boeing's production facility in Everett. *Id* ¶ 2.

### 3. Washington was and remains the hub for Boeing's aircraft safety, research, and development activities relating to cabin air.

The organization within Boeing with the primary expertise regarding the design and function of the 747 air distribution system and for assessing cabin air quality and the potential for contamination of bleed air used to pressurize the cabin is located in Everett, Washington. *Id*. ¶ 8.

FILED DATE: 8/20/2021 1:25 PM   2021L003160

Boeing thus maintains custody and control over documents relating to those topics in Washington. *Id.* ¶ 9.

As for the allegation that Boeing failed to research and develop sensors and converters, Plaintiffs' counsel pursued discovery on that subject in *Woods v. The Boeing Co.*, No. 2015 L 006324, and *Weiland v. The Boeing Co.*, No. 2018 L 008347. That included deposing individuals involved with cabin air quality and individuals in BCA involved in Boeing technology research, development, budgeting, and related decision-making. That discovery demonstrated that personnel with relevant knowledge and involvement on those issues have at all relevant times been based in Washington and remain there to this day.

For example, Plaintiffs' Complaint identifies David Space (Compl. ¶¶ 30, 61), whom Plaintiffs' counsel has repeatedly deposed in past air quality cases. Rosencrans Decl. ¶ 18. Mr. Space was Associate Technical Fellow, Air Quality, at BCA, and he was involved in researching cabin air quality issues, including technologies relating to converters and sensors. *See* Ex. 13, D. Space Tr., 74:5–15. Mr. Space was based in Washington, and all five of his depositions took place in Washington. Rosencrans Decl. ¶¶ 18, 19, & Table 3; Ex. 12. He retired from Boeing on December 4, 2020, but, according to Boeing's records, he continues to reside in Washington. *Id.* ¶¶ 17, 19, & Table 3; Ex. 12.

Mr. Space explained in previous testimony that decision-making with respect to budgeting for cabin air technology research and development projects, such as converters or sensors, was delegated to and rested with BCA product development, including Vice President of Product Development Michael Sinnett. Ex. 13, D. Space Tr. at 36:10–18, 40:13–22, 47:23–48:11. As noted, BCA, including Mr. Sinnett, is and always has been based in Washington. Bowen Decl. ¶¶ 6–7. Plaintiffs' counsel deposed Mr. Sinnett in the *Weiland* case. Rosencrans Decl. ¶ 20. He testified that, as Vice President of Product Development, he has "final say" on budgetary decisions concerning technology development projects concerning air quality, including converters and sensors. Ex. 14, M. Sinnett Tr. at 69:21–70:1, 71:7–73:1, 81:13–20.

FILED DATE: 8/20/2021 1:25 PM    2021L003160

Mr. Sinnett was deposed in Washington and resides and remains employed with Boeing in Washington. Rosencrans Decl. ¶¶ 17, 18, 20, & Table 3; Ex. 12.

Jeanne Yu, another former employee involved with research and product development, has also confirmed that Washington is the home for the relevant activities. Ms. Yu held various positions relating to cabin air quality engineering and technology from the early 2000s through 2016, all based in Washington. Rosencrans Decl. ¶ 21; Ex. 15, Yu Tr. at 42:5–14, 43:12–22, 44:3–16. Deposed in the *Weiland* case while at her home in Washington, Ms. Yu testified that she was responsible for proposing content to get budget allocations for proposed air quality technology research, to be presented to BCA's Vice President of Product Development— Mr. Sinnett and his predecessors. *Id*. Ms. Yu retired from Boeing in July 2020 and resides in Washington. Rosencrans Decl. ¶¶ 17, 21, & Table 3; Ex. 12.

### III.    ARGUMENT

*Forum non conveniens* dismissal is appropriate where it "would better serve the convenience of the parties and the ends of justice." *Gridley*, 217 Ill. 2d at 169. "In short, transfer is allowed where defendant's choice is the substantially more appropriate forum." *Hatleberg*, Ex. 2 at 8 (internal citations and quotations omitted). That "substantially more appropriate forum" is Washington.

In a *forum non conveniens* analysis, the court considers both private and public interest factors to determine which forum is more appropriate—the forum selected by the plaintiffs, or the alternative proposed by the defendant. *First Nat'l Bank v. Guerine*, 198 Ill. 2d 511, 516 (2002). The focus of the inquiry is whether, based on the totality of the circumstances, "the case is being litigated in the most appropriate state." *Fennell*, 2012 IL 113812, ¶ 13.

An available alternative forum is a prerequisite to dismissal on *forum non conveniens* grounds. *Wilder Chiropractic, Inc. v. State Farm Fire & Cas. Co.*, 2014 IL App (2d) 130781, ¶ 39. There can be no dispute that Washington is an available, alternative forum. Boeing consents to jurisdiction and service of process in the Washington courts, which have been the fora for similar cases. *E.g.*, *Finberg v. Boeing Company*, No. 03-cv-00653-RBL (W.D. Wash.);

FILED DATE: 8/20/2021 1:25 PM   2021L003160

*Bradford v. Alaska Airlines Inc., et al.*, No. 98-2-15033-5 (King Cty Sup. Ct.); *Williams v. McDonnell Douglas Corp., et al.*, No. 09-2-15315-9 (King Cty Sup. Ct.). The relevant factors and totality of the circumstances here overwhelmingly favor dismissal in favor of refiling in Washington.

A.      **Plaintiffs' decision to file in Illinois receives little deference.**

Although a *forum non conveniens* analysis generally considers a plaintiff's choice of forum, that factor receives little deference here because Plaintiffs are not Illinois residents, and the events giving rise to their claims took place outside Illinois. *Gridley*, 217 Ill. 2d at 169–70; *Fennell*, 2012 IL 113812, ¶ 18. In such circumstances, "it is reasonable to conclude that the plaintiff engaged in forum shopping to suit his individual interests, a strategy contrary to the purposes behind the venue rules." *Dawdy v. Union Pac. R.R.*, 207 Ill. 2d 167, 174 (2003) (quoting *Certain Underwriters at Lloyd's, London v. Illinois Cent. R.R. Co.*, 329 Ill. App. 3d 189, 196 (2d Dist. 2002)).

The location of Boeing's corporate headquarters does not change this analysis, nor is it indicative of convenience. *See Hatleberg,* Ex. 2 at 11; *Gridley*, 217 Ill. 2d at 172–73 (reversing trial court's denial of motion to dismiss for *forum non conveniens* and explaining that "the fact that a corporation does business within a county in Illinois does not affect the *forum non conveniens* analysis"). Illinois courts routinely hold that the *forum non conveniens* factors favor dismissal where a defendant is headquartered or maintains offices in Illinois, but a critical mass of witnesses and evidence are in the proposed alternate forum. *See, e.g.*, *id*. at 173–74; *Fennell*, 2012 IL 113812, ¶¶ 47–48; *Berbig v. Sears Roebuck & Co.*, 378 Ill. App. 3d 185, 190 (1st Dist. 2007); *Hansen-Runge v. Ill. Cent. R.R. Co.*, 2020 Il App (1st) 190383, ¶¶ 31–32. Indeed, both this Court and the Illinois federal courts have dismissed suits against Boeing on *forum non conveniens* grounds notwithstanding the location of its corporate headquarters. *See Smartwings*, Ex. 1 (granting Boeing *forum non conveniens* motion in favor of refiling in Washington); *Hatleberg*, Ex. 2 (same); *Clerides v. Boeing Co.*, 534 F.3d 623 (7th Cir. 2008) (affirming grant of Boeing motion in favor of refiling out of state); *In re Air Crash Disaster over Makassar Strait,*

FILED DATE: 8/20/2021 1:25 PM   2021L003160

*Sulawesi*, 2011 WL 91037 (N.D. Ill. Jan. 11, 2011) (same); *Claisse v. Boeing Co.*, 2010 WL 3861073 (N.D. Ill. Sept. 28, 2010) (same).[4]

**B.      The private interest factors strongly favor Washington over Illinois.**

The "[p]rivate interest factors" bearing on *forum non conveniens* are the "practical considerations that make a trial easy, expeditious, and inexpensive," "includ[ing] the convenience of the parties; the relative ease of access to sources of testimonial, documentary, and real evidence; the availability of compulsory process to secure attendance of unwilling witnesses; the cost to obtain attendance of willing witnesses; [and] the possibility of viewing the premises, if appropriate." *Dawdy*, 207 Ill. 2d at 172. These factors strongly favor Washington over Illinois.

**1.      Illinois is an inconvenient forum, and Washington is the most convenient forum for all parties.**

When assessing the convenience of the parties, Illinois courts "realistically evaluate convenience" (*Hale v. Odman*, 2018 IL App. (1st), 180280, ¶ 35) and consider whether "corporate representatives will have to travel significant distances to attend a trial" (*Brown v. Cottrell*, 374 Ill. App. 3d 525, 531 (2007)). The vast majority of the Boeing employees likely to represent the company at trial are in Washington. Requiring them to "fly halfway across the country" for a trial in Chicago "when another forum is within driving distance" would be "obvious[ly]" inconvenient. *Hatleberg,* Ex. 2 at 10. For Plaintiffs—who live in the United Kingdom (Compl. ¶¶ 1–4)—trial in Washington would be equally convenient to trial in Illinois. *See Brown*, 374 Ill. App. 3d at 531-32 (fora are equally convenient where each requires "travel by plane").

---

[4] Some courts in Illinois have denied Boeing's requests for *forum non conveniens*, but those cases involved circumstances distinguishable from those here. *E.g.*, *Vivas v. The Boeing Co.*, 392 Ill. App. 3d 644 (1st Dist. 2009); *Arik v. The Boeing Co.*, 2011 IL App (1st) 100750-U (Ill. App. Ct. 1st Dist. 2012); *Abboud v. The Boeing Co.*, No. 17 L 8269 (Cook County Cir. Ct., Ill. Sept. 26, 2018).

FILED DATE: 8/20/2021 1:25 PM   2021L003160

2.      **Accessing discovery will be easier in Washington.**

Without question, as compared to Illinois, Washington would provide far greater "ease of access to sources of testimony, documentary, and real evidence." *Guerine*, 198 Ill. 2d at 516. As the Court noted in *Hatleberg*, "[t]hese are products liability cases concerning the manufacturing and production of airplanes, not the crash of them. Stated another way, these are not cases of how a product's useful life ended, but how it began." *Hatleberg*, Ex. 2 at 10. Boeing employees with relevant knowledge of the design and function of the model 747 air distribution system, as well as Boeing's actions regarding investigation of converters or sensors, are in Washington, and thus that is where depositions of Boeing personnel have occurred in other cases. Rosencrans Decl. ¶¶ 17-21. None of those Boeing employees is in Illinois. *Id*.; *see Hatleberg*, Ex. 2 at 14 (dismissing case where "the bulk of [Boeing's] employees with knowledge are located in Washington"). Likewise, Plaintiffs have not identified a single relevant witness in Illinois. *See Fennell*, 2012 IL 113812, ¶ 28 (dismissing case where "no one connected with plaintiff's side of the case resides in Illinois").

Also, although "in the modern age of Internet," "the location of documents, records and photographs has become a less significant factor in *forum non conveniens* analysis," *Fennell*, 2012 IL 113812, ¶ 36, it remains relevant. *Hatleberg*, Ex. 2 at 14. That factor, too, supports Washington as the more appropriate forum. Boeing's facilities in Washington house the design, production, certification, and testing records for the 747 in general and the particular plane involved in this case. Bowen Decl. ¶ 9. *See Gridley*, 217 Ill. 2d at 174 (dismissing case where "[m]ost of the witnesses" and "any documentary and physical evidence" were outside Illinois).

3.      **Conducting trial will be easier and more expeditious in Washington.**

For all the same reasons, a trial in Washington would be relatively "easy, expeditious, and inexpensive" compared to one in Illinois. *Guerine*, 198 Ill. 2d at 516. Because many potential witnesses are in Washington, and Plaintiffs have identified no relevant witnesses in Illinois, transporting witnesses to Illinois "would be costly" as compared to holding trial in Washington. *Fennel*, 2012 IL 113812, ¶ 34. Transporting those Washington-based Boeing

FILED DATE: 8/20/2021 1:25 PM   2021L003160

witnesses for trial in Illinois would also impose a greater disruption to those employees' work and personal lives—and Boeing's day-to-day operations—than if the trial were held in Washington, a short distance from those employees' homes and workplaces. *See, e.g., Hatleberg,* Ex. 2 at 10 ("It is, however, quite another thing to fly halfway across the country declaring it is 'not inconvenient' when another forum is within driving distance.") Also, to the extent Washington-based non-party witnesses may be needed to testify—including retired Boeing employees, several of whom (including Mr. Space, Mr. Bates, and Ms. Yu) have been identified as witnesses by Plaintiffs in this case or deposed by Plaintiffs' counsel in other cases—only a Washington court will be able to compel their attendance. *See Gridley*, 217 Ill. 2d at 174 ("Illinois courts do not have subpoena power in [Washington].").[5]

## C.   The Public Interest Factors Strongly Favor Washington Over Illinois.

The "public interest" factors for *forum non conveniens* are: "(1) the interest in deciding localized controversies locally; (2) the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a county with little connection to the litigation; and (3) the administrative difficulties presented by adding further litigation to court dockets in already congested fora." *First Nat'l Bank*, 198 Ill. 2d. at 516–17. These factors also strongly support litigating the case in Washington, rather than Illinois.

### 1.   Washington has a stronger interest in deciding the case.

To the extent this controversy is "local" to any jurisdiction, it is Washington. Washington is where the 747 and its bleed air system were designed, where the company's subject matter experts are located, and where the 747 was manufactured and delivered. Bowen Decl. ¶ 8. Any interest Illinois has rests solely on the fact that Boeing relocated its corporate headquarters to

---

[5] Boeing's understanding is that British Airways retired the aircraft in question (along with the remainder of its 747 fleet) in the Fall of 2020 during the downturn in activity caused by COVID-19. It is therefore unlikely there will be any value in a jury visit to the aircraft, and the "possibility of viewing the premises" factor is therefore unlikely to be relevant. *See Fennell*, 2012 IL 113812, ¶ 37. If, however, "the circuit court determines that viewing the premises [where the aircraft was produced] is appropriate or necessary, it would be irrational for a jury composed of [Cook] County residents to travel to [Washington] to view the premises, when such viewing could be accomplished more expeditiously if this case were tried in [Washington]." *Id*. ¶ 39.

FILED DATE: 8/20/2021 1:25 PM   2021L003160

Chicago, which has been deemed "irrelevant" to the public interest factors. *See Lambert v. Goodyear Tire & Rubber Co.*, 332 Ill. App. 3d 373, 382 (1st Dist. 2002); *see also Gridley*, 217 Ill. 2d at 175 (though defendant was headquartered in Illinois, finding "no strong policy reason or other strong Illinois connection to this case that would weigh in favor of Illinois," given that alleged tortious conduct occurred out of state). The sole purported witness based in Illinois— David Calhoun, Boeing's CEO since 2020—has no relevant testimony for this case and thus does not provide an "indicator of convenience," nor does he "counterbalance the substantial number of identified witnesses located in Washington." *See Hatleberg,* Ex. 2 at 22.

2. **The burden associated with trial should not fall on the residents of Illinois.**

"Jury duty constitutes a burden to the citizens of a county who must serve on the jury," and "[t]he county in which the trial is held is financially burdened by the payment of jurors' fees and by providing court personnel and court facilities" and "by the necessity to provide judicial personnel and the machinery for appellate review." *Fennell*, 2012 IL 113812, ¶ 45. That burden "ought not to be imposed upon the people of a community which has no relation to the litigation." *People ex rel. Compagnie Nationale Air France v. Giliberto*, 74 Ill. 2d 90, 111 (1978). Thus, "[t]he public interest requires that causes which are without significant factual connections to particular forums be dismissed in favor of, or transferred to, convenient forums." *Fennell*, 2012 IL 113812, ¶¶ 44-45. The Supreme Court identified these considerations in ruling that dismissal was required in *Fennell* (*id*.) and *Gridley* (217 Ill. 2d at 175), and they apply equally here. Trial in Cook County would impose an unwarranted burden on its citizens, whose time, tax dollars, and court resources would have to support a trial evaluating claims asserted by out-of-state Plaintiffs based on conduct that occurred in Washington.

3. **Keeping this case on the Circuit Court's congested docket would impose unnecessary administrative difficulties.**

"Courts generally have shared a concern in protecting finite judicial resources and the efficient functioning of their judicial systems, so that they are not impeded by nonresident litigation to the extent that their availability to local citizens is impaired or diminished."

FILED DATE: 8/20/2021 1:25 PM   2021L003160

*Espinosa v. Norfolk & W. R. Co.*, 86 Ill. 2d 111, 121 (1981). According to the most recent annual report of the Administrative Office of the Illinois Courts, 853,539 new cases were filed in Cook County Circuit Court during 2019, and 1,657,936 cases remained pending at the end of that year. *See* Admin. Conf. of the Ill. Cts., Statistical Summary, 2019 Annual Report of the Illinois Courts, at 24.[6] For law division cases involving more than $50,000, the average length of time between filing and verdict was 29.9 months. *See* Statistical Summary at 71.

By comparison, in the Superior Court for King County, Washington, which encompasses many of Boeing's relevant Washington facilities, there were 52,889 new cases filed, and 61,812 cases resolved, in all of 2019. King Cty. Superior Court, 2019 Annual Statistical Report (Feb. 14, 2020), at 2.[7] Nearly all cases are disposed of within 24 months. *See* Superior Court, 2018 Annual Caseload Report, at 317 Report (99.29%)[8]; Superior Court, 2017 Annual Caseload Report, at 279 (99.26%)[9]; Superior Court, 2016 Annual Caseload Report at 253 (99.11%).[10] Likewise, in the District Court for the Western District of Washington, the overall median time for resolving civil cases was 7.8 months for the period spanning March 2020 to March 2021, and the median time for resolving cases that went to trial was 24.6 months. Table C-5, U.S. District Court Cases—Median Time Intervals From Filing To Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2021.[11] Thus, the level of activity and congestion in the Washington courts is less than in Cook County Circuit Court.

Particularly because Plaintiffs are "nonresident[s] who suffered … injur[ies] outside Illinois," the comparative congestion of this Court is another factor favoring dismissal.

---

[6] *Available at:* https://www.illinoiscourts.gov/Resources/9ce30c6e-f2c8-4990-b5b4-a1eae2db5739/2019_Statistical_Summary.pdf

[7] *Available at:* https://kingcounty.gov/~/media/courts/Clerk/docs/Statistics/2019_annual.ashx?la=en.

[8] *Available at:* https://www.courts.wa.gov/caseload/content/archive/superior/Annual/2018.pdf.

[9] *Available at:* https://www.courts.wa.gov/caseload/content/archive/superior/Annual/2017.pdf.

[10] *Available at:* https://www.courts.wa.gov/caseload/content/archive/superior/Annual/2016.pdf.

[11] *Available at:* https://www.uscourts.gov/file/34164/download (last accessed August 16, 2021).

FILED DATE: 8/20/2021 1:25 PM   2021L003160

*Brummett v. Wepfer Marine, Inc.*, 111 Ill. 2d 495, 502–03 (1986); *see also Giliberto*, 74 Ill. 2d at 111 (same).

### IV.   CONCLUSION

Boeing respectfully requests that the Court follow *Hatleberg, Smartwings*, and other cases heeding the Supreme Court's admonishment that "a case should not be tried in a forum that has no significant factual connections to the cause of action." *Fennell*, 2012 IL 113812, ¶ 46. The facts strongly support dismissal of this case based on *forum non conveniens* in favor of litigation in Washington.

Dated:  August 20, 2021                    Respectfully submitted,

By:/s/ *Kathleen Stetsko*
_____
One of Its Attorneys

| **Winston & Strawn LLP** | **Perkins Coie LLP** |
|---|---|
| Dan K. Webb | V.L. Woolston |
| Joseph L. Motto | Todd W. Rosencrans |
| 35 W. Wacker Dr. | *(Rule 707 applications forthcoming)* |
| Chicago, IL 60601 | 1201 Third Avenue, Suite 4900 |
| T. (312) 558-5600 | Seattle, WA 98101 |
| F. (312) 558-5700 | T. (206) 359-8000 |
| DWebb@winston.com | VWoolston@perkinscoie.com |
| JMotto@winston.com | TRosencrans@perkinscoie.com |
| | |
| Sandra A. Edwards | Kathleen A. Stetsko |
| 101 California Street | 131 South Dearborn Street |
| San Francisco, CA 94111 | Suite 1700 |
| T. (415) 591-1000 | Chicago, Illinois 60603 |
| F. (415) 591-1400 | Tel: (312) 324-8400 |
| SEdwards@winston.com | KStetsko@perkinscoie.com |

*Attorneys for The Boeing Company*

FILED DATE: 8/20/2021 1:25 PM   2021L003160

## CERTIFICATE OF SERVICE

On August 20, 2021, I caused a true and complete copy of the foregoing **Defendant The Boeing Company's Motion to Dismiss Under the Doctrine of *Forum Non Conveniens*** to be served by transmitting it by __email__ to the following recipients:

*Attorneys for Plaintiff*

Joseph A. Power, Jr.
joepower@prslaw.com
Kathryn L. Conway
kconway@prslaw.com
POWER ROGERS & SMITH PC
70 West Madison Street, 55th Floor
Chicago, Illinois 60602
(312) 236-9381

Zoe Littlepage
zoe@littlepagebooth.com
Rainey Booth
rainey@littlepagebooth.com
Elizabeth Booth
elizabeth@littlepagebooth.com
T. Matthew Leckman
matt@leckmanlaw.com
LITTLEPAGE BOOTH LECKMAN
2043A West Main
Houston, Texas 77098
(713) 529-8000

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this certificate are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

*s/ Kathleen Stetsko*
Kathleen Stetsko
One of the attorneys for Defendant
The Boeing Company

FILED
8/20/2021 1:25 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021L003160

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

|  |  |  |
|---|---|---|
| SARA JANE BUSH, BLAIR VEAKINS, TOULLA HADJIGEORGIOU, AND GEORGE HADJIGEORGIOU, | ) ) ) ) | No. 2021 L 003160 |
| Plaintiffs, | ) ) | Hon. John H. Ehrlich |
| v. | ) ) |  |
| THE BOEING COMPANY, | ) ) |  |
| Defendant. | ) ) |  |

_____

**DECLARATION OF JACOB BOWEN IN SUPPORT OF THE BOEING COMPANY'S
MOTION TO DISMISS UNDER THE DOCTRINE OF _FORUM NON CONVENIENS_**

I, Jacob Bowen, declare as follows:

1.      I am the Engineering Director, Airplane Systems, for The Boeing Company. I have worked for Boeing for 24 years. I have worked and resided in the State of Washington since 2000. I make this declaration based on my personal knowledge and based on my review of Boeing records created and kept in the ordinary course of Boeing's business.

2.      I understand that the incident at issue in this lawsuit (British Airways Flight 174) involved a Boeing 747-400 model aircraft (serial number 28856, registration no. G-BYGB). That aircraft was delivered to owner British Airways on January 17, 1999, at Boeing's production facility at Everett, Washington.

3.      All 747 deliveries have taken place in Washington, where Boeing's commercial aircraft operations have always been headquartered. Specifically, those deliveries were out of Boeing's production facility in Everett, Washington.

FILED DATE: 8/20/2021 1:25 PM   2021L003160

FILED DATE: 8/20/2021 1:25 PM   2021L003160

4.      Boeing was founded in 1916 in the Puget Sound region of Washington State. Boeing initiated the 747 program in the late 1960's, the first 747 was ordered in 1966, and the design was certified as airworthy in 1969. Boeing constructed its Everett, Washington production facility, the largest manufacturing building in the world by volume, in 1967 in order to manufacture the 747.

5.      All 747 aircraft, including the incident aircraft, were originally developed, designed, assembled, certified, and delivered by Boeing in Washington. The 747 air distribution system, including the bleed air system, was designed in Washington.

6.      In 2001, Boeing relocated its corporate headquarters to Chicago, Illinois. But the headquarters of Boeing Commercial Airplanes ("BCA") has always remained in Washington and Boeing continues to maintain extensive facilities in Seattle and the surrounding areas, including the suburb of Everett, Washington.

7.      BCA is the business unit that designs, manufactures, tests, markets, and sells Boeing's commercial aircraft, including all 747 aircraft. BCA's executive leadership functions are located in Washington, including the President and Chief Executive Officer of BCA Stanley Deal, the BCA Vice President of Engineering and Chief Engineer Lynne Hooper, and BCA's Vice President of Product Development Michael Sinnett.

8.      Boeing's activities in connection with development, design, assembly, testing, and certification of 747 model aircraft, including the 747-400, have always been based predominantly in Washington. Since the inception of the 747 program, the production of the 747 aircraft has occurred at the BCA production facilities in Everett, Washington. The 747 Director of Engineering is located in Washington. In addition, the organization with the primary subject-matter expertise regarding the design and function of the 747 air distribution system and that has

been responsible for assessing cabin air quality and the potential for contamination of bleed air used to pressurize the cabin, is located in Everett, Washington, where all 747 aircraft are assembled, tested, certified, and delivered.

9.      Boeing maintains custody and control over documents relating to the development, design, assembly, testing, and certification of 747 model aircraft (including the 747-400), including the design and function of the 747 air distribution system, in Washington. Boeing employees with knowledge of the development, design, assembly, testing, and certification for the 747 model aircraft are located in Washington as well. None are located in Illinois.

10.     Boeing currently has more than 55,000 employees in the State of Washington and 1,200 employees in Illinois. Boeing does not operate any production facilities in Illinois. To my knowledge, no Boeing witnesses or documents that are relevant to British Airways Flight 174, Plaintiffs' claims, or Boeing's defenses are located in Illinois.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes to be the same to be true.

Executed at Everett, Washington, this 19th day of August, 2021.

Jacob Bowen

FILED DATE: 8/20/2021 1:25 PM   2021L003160

FILED
8/20/2021 1:25 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021L003160

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

SARA JANE BUSH, BLAIR
VEAKINS, TOULLA
HADJIGEORGIOU, and GEORGE
HADJIGEORGIOU,

                Plaintiffs,

    v.

THE BOEING COMPANY,

                Defendant.

No. 2021 L 003160

Hon. John H. Ehrlich

**DECLARATION OF TODD ROSENCRANS IN SUPPORT OF
DEFENDANT THE BOEING COMPANY'S MOTION TO DISMISS
UNDER THE DOCTRINE OF *FORUM NON CONVENIENS***

I, Todd Rosencrans, declare as follows:

1.     I am an attorney with the firm of Perkins Coie LLP and will be admitted *pro hac vice* in this Court as one of the attorneys for Defendant The Boeing Company. If called as a witness, I could and would testify competently to the matters set forth in this declaration.

2.     I submit this declaration in Support of Defendant The Boeing Company's Motion to Dismiss Under the Doctrine of *Forum Non Conveniens*.

3.     Exhibit 1 hereto is a true and correct copy of the Court's order granting Boeing's *forum non conveniens* motion to dismiss in *Smartwings, A.S. v. The Boeing Company*, No. 2020-L-008114, Order (Cook County Cir. Ct., Ill. Jan. 11, 2021) (J. Shelley).

4.     Exhibit 2 hereto is a true and correct copy of the Court's order granting Boeing's *forum non conveniens* motion to dismiss in *Hatleberg v. The Boeing Co.*, No. 18 L 1816, Order (Cook County Cir. Ct., Ill. Nov. 13, 2019) (J. Ehrlich).

5.     Exhibit 3 hereto is a true and correct copy of Plaintiffs' operative Complaint in this case.

FILED DATE: 8/20/2021 1:25 PM   2021L003160

6.      On June 3, 2021, Boeing served interrogatories on each Plaintiff. Plaintiffs submitted separate responses to Boeing's interrogatories on July 1, 2021, and amended responses on July 19, 2021.

7.      Exhibit 4 hereto is a true and correct copy of Plaintiff Sara Jane Bush's response to Boeing's Interrogatories, including Plaintiff's verification.

8.      Exhibit 5 hereto is a true and correct copy of Plaintiff Sara Jane Bush's amended response to Boeing's Interrogatories, including Plaintiff's verification.

9.      Exhibit 6 hereto is a true and correct copy of Plaintiff Blair Veakins' response to Boeing's Interrogatories, including Plaintiff's verification.

10.     Exhibit 7 hereto is a true and correct copy of Plaintiff Blair Veakins' amended response to Boeing's Interrogatories, including Plaintiff's verification.

11.     Exhibit 8 hereto is a true and correct copy of Plaintiff Toulla Hadjigeorgiou's response to Boeing's Interrogatories, including Plaintiff's verification.

12.     Exhibit 9 hereto is a true and correct copy of Plaintiff Toulla Hadjigeorgiou's amended response to Boeing's Interrogatories, including Plaintiff's verification.

13.     Exhibit 10 hereto is a true and correct copy of Plaintiff George Hadjigeorgiou's response to Boeing's Interrogatories, including Plaintiff's verification.

14.     Exhibit 11 hereto is a true and correct copy of Plaintiff George Hadjigeorgiou's amended response to Boeing's Interrogatories, including Plaintiff's verification.

15.     In their responses to Boeing Interrogatory Nos. 3, 4, and 6, Plaintiffs identified by name and address the health care providers with whom Plaintiffs have consulted or by whom Plaintiffs were treated or examined prior to November 25, 2019, the date of the subject flight, or in connection with their alleged injuries suffered during the subject flight. Table 1 below lists those individuals, along with their location as indicated by Plaintiffs. As shown in Table 1, none of the medical providers Plaintiffs identified are located in Illinois.

FILED DATE: 8/20/2021 1:25 PM   2021L003160

16.     In their responses to Boeing Interrogatory No. 3, Plaintiffs identified alleged third-party fact witnesses. Excluding unspecified categories of individuals, Plaintiffs themselves, medical treaters/first responders (discussed *supra*), and Boeing employees (discussed *infra*), Plaintiffs collectively identified 48 individuals as alleged third-party fact witnesses. Plaintiffs did not provide location information all of these individuals, although it was requested. Table 2 below lists these 48 individuals, along with their location to the best that counsel has been able to determine through its public records research. As shown in Table 2, to the best that counsel has been able to determine, none of the 48 third-party fact witnesses identified by Plaintiffs is located in Illinois.

17.     In their responses to Boeing Interrogatory No. 3, Plaintiffs identified 89 individuals they contend are current or former Boeing employees who possess information relevant to their claims. Among those are the following Boeing employees also identified in Plaintiffs' Complaint: Jacob Bowen, Jane Butera (Vikuske Matera), David Space, George Bates, and Jean Ray. Exhibit 12 hereto is a true and correct copy of a report generated from Boeing human resources data identifying those among the 89 individuals for whom Boeing has a record of employment by employee identification number, name, employment status, and last known home state location. For ease of reference, a table listing the individuals, along with their employment status with Boeing and location as taken from Exhibit 12, is included below as Table 3. Boeing has no record that six of the 89 identified individuals—Jon Battershill, Bill Benham, Hal Hagar, Pete Malone, Steve Tochlin, and Clifford Weisel—are or ever were Boeing employees. As shown in Table 3, of the remaining 83 individuals, 65 of them (78%) are based in Washington. And of those 65 Washington-based individuals, 33 are retired or otherwise no longer employed with Boeing. According to Boeing records, one of those retired individuals, Russ Benson, used to work in Illinois but now resides in Washington. Out of the 83 current or former Boeing employees identified by Plaintiffs, only one—David Calhoun, Boeing's current President and CEO—has a current connection to Illinois.  Mr. Calhoun became a Boeing employee in January 2020.

FILED DATE: 8/20/2021 1:25 PM   2021L003160

18.     In *Woods v. The Boeing Co.*, No. 2015 L 006324, and *Weiland v. The Boeing Co.*, No. 2018 L 008347, Plaintiffs' counsel deposed certain Boeing employees listed as witnesses in Plaintiffs' interrogatory responses. Those include David Space, whom was deposed on five occasions in *Woods* and *Weiland* (whether in his individual capacity or as a corporate designee), all while he was located in Washington; Michael Sinnett, who was deposed in *Weiland* while located in Washington; and Jeanne Yu, who was also deposed in *Weiland* while at her home in Washington.

19.     Exhibit 13 hereto are excerpts from the June 16, 2020 deposition of Mr. Space, as designee for Boeing, taken in *Weiland*, with Mr. Space located in Washington. Mr. Space retired from Boeing on December 4, 2020.

20.     Exhibit 14 hereto are excerpts from the December 1, 2020 deposition of Mr. Sinnett, taken in *Weiland*, with Mr. Sinnett located in Washington.

21.     Exhibit 15 hereto are excerpts from the December 8, 2020 deposition of Ms. Yu, taken in *Weiland*, while Ms. Yu was at her home in Washington. Ms. Yu retired from Boeing in July 2020.

22.     Perkins Coie attorneys represent Boeing in this matter on a co-counsel basis with Winston & Strawn attorneys. Perkins Coie has offices around the world, including Chicago and Seattle. Winston & Strawn also has offices around the world, including in Chicago. If this case were tried in a Washington forum, Perkins Coie's Seattle- and Chicago-based attorneys would litigate the case for Boeing in partnership with Winston & Strawn's Chicago-based attorneys.

23.     Consistent with Illinois Supreme Court Rule 187, should this action be dismissed under the doctrine of *forum non conveniens*, and if Plaintiffs elect to file the action in a forum in the State of Washington within six months thereafter, Boeing agrees to accept service from the Washington court. Likewise, if the statute of limitations has run in the other forum, Boeing shall waive that defense.

FILED DATE: 8/20/2021 1:25 PM   2021L003160

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Dated:  August 20, 2021

By: _____

Todd Rosencrans

-5-

Exhibit B

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| Sara Jane Bush, Blair Veakins, Toulla Hadjigeorgiou, and George Hadjigeorgiou, <br><br> Plaintiffs, <br><br> v. <br><br> The Boeing Company, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) |

No. 21 L 3160

## <u>MEMORANDUM OPINION AND ORDER</u>

The interstate *forum non conveniens* doctrine authorizes the dismissal of a complaint and its re-filing elsewhere if the weighing of various private and public factors strongly favors the dismissal. The balance of factors in this case demonstrates there is little if any linkage between the foreign-plaintiffs' injuries that occurred in New York and the corporate defendant's Cook County headquarters. The defendant's motion is, therefore, granted and this case is dismissed pursuant to Illinois Supreme Court Rule 187(c)(2).

<u>Facts</u>

On August 20, 2021, The Boeing Company filed a motion pursuant to Illinois Supreme Court Rule 187 to dismiss this case and permit its transfer elsewhere. The parties subsequently conducted limited discovery related to the motion. The parties' extensive pleadings, including supplemental filings and numerous exhibits, present the following relevant facts:

- In the late 1960s, Boeing initiated its 747 aircraft program. The design and production of the Boeing 747, including the design of its air distribution system, occurred at the Boeing Commercial Airplanes (BCA) production facilities in Everett, Washington.
- BCA is a corporate division of Boeing and is headquartered in Washington. BCA's executive leadership—including its president and chief executive officer, vice president of engineering, and vice president of product development—are located in Washington.
- Boeing and BCA's primary design and production facilities are in the greater Seattle, Washington region.

- On January 17, 1999, British Airways took delivery of the Boeing 747 at issue in this case at Boeing's production facilities in Everett.
- In 2001, Boeing moved its worldwide corporate headquarters from Seattle to Chicago.
- On November 25, 2019, a contaminated air event occurred before the take off of a British Airways Boeing 747 at John F. Kennedy International Airport in New York.  The pilot aborted the flight and returned to the gate.  The plane had been scheduled to fly to London, England.
- Sara Jane Bush and Blair Veakins are British Airways flight attendants who are citizens and residents of the United Kingdom. Bush and Veakins were working in the 747 at the time of the contaminated air event.
- Toulla Hadjigeorgiou and George Hadjigeorgiou are citizens and residents of the United Kingdom.  They were passengers in the plane at the time of the contaminated air event.
- None of the plaintiffs received medical care or treatment in Illinois.
- The plaintiffs' complaint identifies two current Boeing employees, Jacob Bowen and Jane Matera and three former Boeing employees, David Space, George Bates, and Jean Ray, as knowledgeable about cabin air quality and the 747's bleed air system design.  Each of these current and former employees lives in Washington.
- The plaintiffs' interrogatory answers identify 48 third-party fact witnesses who the plaintiffs believe have relevant information concerning the issues in this case.  A Boeing attorney supplied a declaration that a public records search indicates that none of the 48 witnesses lives in Illinois.
- The plaintiffs' interrogatory answers also identify 89 current or past Boeing employees who the plaintiffs believe have relevant information concerning the issues in this case.  A Boeing internal review concluded that six of the identified witnesses never worked for Boeing.  Of the 83 current or past Boeing employees, 65 live or work in Washington.
- David Calhoun, Boeing's president and chief executive officer, lives and works in Illinois.  Calhoun became a Boeing employee in January 2020.
- Boeing maintains custody and control over documents relating to the design and function of the 747's air distribution system and the assessment of cabin air quality and the potential for contamination of bleed air used to pressurize the aircraft.  Those documents are located in Everett, Washington.

Analysis

A motion filed pursuant to the *forum non conveniens* doctrine seeks to transfer a lawsuit from one forum with proper venue to another, more convenient forum with proper venue. *Tabirta v. Cummings*, 2020 IL 124798, ¶ 1. Thus, "this doctrine assumes the existence of at least two forums in which the defendant is amenable to jurisdiction." *Foster v. Chicago & N. W. Transp. Co.*, 102 Ill. 2d 378, 381 (1984). Here, Cook County, Illinois as well as courts in the states of Washington and New York are proper venues for this action.

A *forum non conveniens* challenge may be made on an intrastate and, as in this case, an interstate basis. *See Fennell v. Illinois Cent. R.R.*, 2012 IL 113812, ¶ 13 (2012). The same considerations of convenience and fairness apply regardless of the ultimate venue. *Id., citing Dawdy*, 207 Ill. 2d at 176 (collecting cases). If a court grants a motion to transfer interstate, the litigation must be dismissed since Illinois courts cannot impose litigation on those of another state. *Id., citing* 3 Richard A. Michael, Illinois Practice § 14:1, at 220 (2d ed. 2011). The dismissal presumes the plaintiff will timely re-file the action in the other state and requires the defendant to accept service of process from that court and waive any statute of limitations defense. *Id., citing* Ill. S. Ct. R. 187(c)(2).

The equitable doctrine of *forum non conveniens* is well established in Illinois courts and is "founded in considerations of fundamental fairness and sensible and effective judicial administration." *First Nat'l Bank v. Guerine*, 198 Ill. 2d 511, 515 (2002) (quoting *Adkins v. Chicago, Rock Island & Pac. R.R. Co.*, 54 Ill. 2d 511, 514 (1973)). Illinois courts adopted the modern line of precedent from the United States Supreme Court case *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *See Fennell*, 2012 IL 113812, ¶ 14 (listing cases). A *forum non conveniens* motion requires the movant to show the overall weight of several convenience factors strongly favors transfer (or dismissal) to a more convenient forum. *Guerine*, 198 Ill. 2d at 517 (citing *Griffith v. Mitsubishi Aircraft Int'l, Inc.*, 136 Ill. 2d 101, 106 (1990)).

The convenience factors adopted from *Gulf* are divided into "private interest factors affecting the litigants and public interest factors affecting court administration." *Fennell*, 2012 IL 113812, ¶ 14. Illinois courts have defined the private factors to include:

> (1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; and (3) all other practical problems that make a trial of a case easy, expeditious, and inexpensive—for example, the availability of

compulsory process to secure attendance of unwilling witnesses,
the cost to obtain attendance of willing witnesses, and the ability
to view the premises (if appropriate).

*Guerine*, 198 Ill. 2d at 516 (citing cases).  Courts have generally broken down
the third element to address each aspect separately.  The public interest
factors are:

> (1) interest in deciding localized controversies locally; (2) the
> unfairness of imposing the expense of a trial and the burden of
> jury duty on residents of a county with little connection to the
> litigation; and (3) the administrative difficulties presented by
> adding further litigation to court dockets in already congested fora.

*Id.* at 516-17.  The public and private factors are not weighed against each
other but are weighed together to test whether they strongly favor transfer
away from the plaintiff's chosen forum. *Fennell*, 2012 IL 113812, ¶ 18.
Courts are admonished that "[t]he plaintiff's right to select the forum is
substantial" and "should rarely be disturbed." *Id.*

The consideration given to a *forum non conveniens* motion rests on
several relevant presumptions.  First, as to a plaintiff's choice of forum,
"[w]hen the home forum is chosen, it is reasonable to assume that the choice
is convenient. [Second,] [w]hen the plaintiff is foreign to the forum chosen . . .
this assumption is much less reasonable and the plaintiff's choice deserves
less deference." *Guerine*, 198 Ill. 2d 511, 517-18 (2002), citing cases.  Third,
"[w]hen the plaintiff is foreign to the chosen forum and the action that gives
rise to the litigation did not occur in the chosen forum, 'it is reasonable to
conclude that the plaintiff engaged in forum shopping to suit his individual
interests, a strategy contrary to the purposes behind the venue rules.'" *Bruce
v. Atadero*, 405 Ill. App. 3d 318, 328 (1st Dist. 2010) (citing *Dawdy*, 207 Ill. 2d
at 174, quoting, in turn, *Certain Underwriters at Lloyd's London v. Illinois
Cent. R.R.*, 329 Ill. App. 3d 189, 196 (1st Dist. 2002)).  The Supreme Court
has plainly stated its position against forum shopping: "Decent judicial
administration cannot tolerate forum shopping as a persuasive or even
legitimate reason for burdening communities with litigation that arose
elsewhere and should, in all justice, be tried there." *Fennell*, 2012 IL 113812,
¶ 19.

Before applying the private and public factors to the case at hand, this
court believes some commentary on the *forum non conveniens* analysis is
warranted.  First, Illinois courts analyzing motions to transfer litigation
based on the *forum non conveniens* doctrine have tended to focus on trials
and not discovery.  The reality is, however, that very, very few cases go to

trial. Further, the amount of time parties and their attorneys spend in discovery far exceeds the amount of time they spend at trial. Analysis focused on trials is, quite frankly, out of sync with modern litigation practice. A more current analysis would give equal or greater weight to the applicability of enumerated factors to pre-trial proceedings, particularly the discovery process.

Second, the *forum non conveniens* analysis, as stated in *Langenhorst* and its progeny, has not been updated over the past fifteen years to reflect the changing face of litigation. Several of the factors enumerated in the analysis do not reflect the reality of modern litigation, such as viewing the premises, which rarely, if ever, occurs during a modern jury trial. Other factors have been rendered trivial because of improved technology and its entrenchment in court proceedings. In application, this reality renders the public factors far weightier than the private factors.

Third, the Covid-19 pandemic has altered the private convenience factors related to obtaining parties' and witnesses' deposition or trial testimony. It is now common for depositions and trial testimony to occur remotely, with attorneys, witnesses, and a court reporter in multiple, separate locations. The cost savings to all parties have been enormous. It is difficult to think that clients, counsel, and witnesses will return to far more expensive discovery and trial practices after the pandemic is over.

Fourth, these cost and time savings further muddle the *forum non conveniens* analysis. If, for example, technology has made in-person depositions a thing of the past, then venue for the discovery portion of a case is next to irrelevant given that all documents are now electronically transferable. That conclusion would also make the trial portion of the case the only relevant temporal factor, in contrast to this court's earlier point that *forum non conveniens* should focus more on the discovery phase.

A court of appeal will, hopefully, address these issues in the near future. In the meantime, and notwithstanding the limitations of the current *forum non conveniens* analysis, this court will proceed with the required factor analysis described above.

I.      Private Factors

    A.      Convenience of the Parties

As to the first private factor, "[t]he defendant must show that the plaintiff's chosen forum is inconvenient to the defendant and that another forum is more convenient to all parties." *Langenhorst*, 219 Ill. 2d at 444.

Although a defendant is not required to claim a plaintiff's chosen venue is inconvenient for the plaintiff, *Guerine*, 198 Ill. 2d at 518, courts have also recognized it is quite easy for a party to declare its forum preference as convenient and the opposing party's as inconvenient. "If we follow this reasoning, the convenience of the parties means little. . . ." *Hale v. Odman*, 2018 IL App (1st) 180280, ¶ 34 (quoting *Fennell*, 2012 IL 113812, ¶ 20). "To avoid this inevitable conflict, we must look beyond the declarations of convenience and realistically evaluate convenience and the actual burden each party bears when traveling to the plaintiff's chosen forum." *Id.* at ¶ 35.

The plaintiffs boldly state that, "The Buck Stops in Chicago." While that statement may be true for purposes of ultimate corporate liability, it has nothing to do with *forum non conveniens,* which focuses on discrete subjects, particularly the location of witnesses. Here, the plaintiffs' complaint and interrogatory answers identify at least 141 Boeing employees who allegedly have relevant information relating to the design, production, and operation of the 747's air system. Of those, Boeing has identified at least 117 as Washington residents. Although the plaintiffs identify various Boeing executives located in Chicago, the record does not illuminate their particular knowledge or its relevance to the issues in this case. For example, it is true that Boeing's president and CEO, David Calhoun, is located in Chicago, yet he was approximately 10 years old when Boeing began developing the 747, and only became a Boeing employee in 2020. *See* https://www.boeing.com/company/bios/david-l-calhoun.page. While Calhoun may be familiar with the 747's bleed air system, it is likely Boeing employees who work regularly on that system would have greater and non-cumulative knowledge compared to Chicago-based corporate executives who focus on corporate management and governance.

The plaintiffs identify several key Boeing employees knowledgeable about the issues in this case based on their prior testimony in other cases. Those depositions, attached as exhibits, establish the witnesses' relevant knowledge, but also emphasize the obvious—the Boeing employees are not in Chicago. Even if all Boeing personnel are deposed in discovery via an electronic link, their sheer number means it will be far more inconvenient for them to appear at a trial anywhere but Washington.

The plaintiffs have also done little to explain how Cook County is a more convenient forum for them or for the defendants. While a plaintiff does not have such a burden under a *forum non conveniens* analysis, such an explanation would have been useful given the unavoidable presumption that the plaintiffs are forum shopping. Yet, given that each plaintiff is a United Kingdom resident with no ties to Illinois, in general, or Cook County, in

particular—they did not even receive medical treatment in Cook County—there simply was not much of an argument to be made.

The plaintiffs would also have been challenged to argue that Cook County is the more convenient forum given that international travel is inevitable regardless of venue. A flight from London to Chicago, a distance of 3,949 miles, takes eight hours and 45 minutes; a flight from London to Seattle, a distance of 4,786 miles, takes nine hours and 49 minutes; and a flight from London to New York, a distance of 3,456 miles, takes six hours and 46 minutes. *See* https://www.finance.co.uk/ travel/flight-times-and-durations-calculator. In the larger fabric of this lawsuit, an additional two or three hours of flight time is a mere slub of inconvenience.

The plaintiffs press hard the fact that Boeing is headquartered in Cook County, despite similar arguments having been made and rejected. In *Hansen-Runge v. Illinois Central R.R.*, for example, the court acknowledged that if a defendant is headquartered in the plaintiff's chosen forum, a transfer is generally unwarranted because the defendant cannot convincingly claim inconvenience. 2020 IL App (1st) 190383, ¶ 31 (citing *Johnson v. Nash*, 2019 IL App (1st) 180840, ¶ 44. The court, nonetheless, reversed the circuit court and ordered the interstate motion to transfer because the railroad's Cook County presence was "the *only* factor tying this case to the County or to the entire state." *Id.* at ¶ 32 (emphasis in original). As explained in *Dawdy*, if the fact that the defendant conducts business in the plaintiff's chosen forum were dispositive, the *forum non conveniens* doctrine "would be entirely vitiated, and no transfer would ever be obtained. Rather, plaintiff's choice would be elevated to the stature of a dispositive consideration, which is patently not to be allowed." *Dawdy*, 207 Ill. 2d at 182 (quoting *Franklin v. FMC Corp.*, 150 Ill. App. 3d 343, 347 (1st Dist. 1986)).

The singular fact that Boeing is headquartered in Cook County is insufficient to overcome the fair inference that Boeing employees in Washington have superior, non-cumulative knowledge of the 747's bleed air system compared to Chicago-based executives. The inconvenience of these witnesses at a trial in Chicago favors the dismissal of this lawsuit and its re-filing elsewhere.

B.    The Relative Ease of Access to Evidence

The plaintiffs cite various cases currently in the discovery process in Cook County circuit court and federal district court for the northern district of Illinois. According to the plaintiffs, discovery in these Cook County cases establishes that "remote discovery can be—indeed already has been—conducted just as easily in Chicago as it would anywhere else." This court

7

has no doubt that the discovery of information, particularly formerly paper documents, is now easily transferable to any location. *See Ruch v. Padget*, 2015 IL App (1st) 142972, ¶¶ 61, 65. The fact that discovery may be conducted almost anywhere does not mean it is more conveniently conducted in Cook County. Rather, as the plaintiffs' argument implicitly acknowledges, the access to evidence during the discovery phase means that venue for purposes of discovery is neutral.

The same conclusion is evident as to any oral discovery of the plaintiffs' medical treatment. Out of professional courtesy, physicians, whether parties or non-parties, are nearly always deposed where they work. Further, non-party medical trial testimony is nearly always presented through pre-recorded evidence depositions. Convenience to a plaintiff's physician is, therefore, of little consequence.

This court must, however, consider the possibility that this case will not settle, but will go to trial. Given that eventuality, the overwhelming number of witnesses identified by the plaintiffs is a weighty factor. As noted above, the vast majority of the parties' witnesses are located in Washington. That factor, when applied to the possibility of a trial, strongly favors dismissal and re-filing elsewhere.

C.     Compulsory Process of Unwilling Witnesses

This court assumes that, were this case to proceed in Cook County, Boeing would facilitate the presentation of its current employees. A Cook County court would, however, have no effective means to compel the testimony of any retired Boeing employees living outside Illinois. By Boeing's count, there are approximately 24 witnesses in that category. Had information been provided indicating the nature and scope of these witnesses' testimony, it would be possible to eliminate some of them as cumulative or otherwise unnecessary. Without more information, however, the only conclusion to be drawn is that only a Washington court can compel process of unwilling witnesses. This factor favors a dismissal.

D.     Cost of Obtaining Attendance of Willing Witnesses

Neither party addresses the costs associated with obtaining the attendance of willing witnesses. This factor must, therefore, be considered neutral.

8

E.      Viewing the Premises

The convenience factor is not concerned with the necessity of viewing the site but rather the possibility of viewing the site, if appropriate. *Dawdy*, 207 Ill. 2d at 178. In this case, the "site" is a specific 747 aircraft. It is unknown whether the plane is still in service or owned by British Airways. It is inconceivable that any court would excuse a jury to take a walk on a 747's wings or climb scaffolding to peer into the engines to understand the technical aspects of the bleed air system at issue in this case. Technical drawings plainly provide a far safer and more accessible source of information. This factor is, therefore, considered neutral.

F.      Other Practical Considerations That Make a Trial Easy, Expeditious, and Inexpensive

The parties do not meaningfully address this factor; consequently, it is considered neutral.

## II.     Public Factors

A.      Deciding Localized Controversies Locally

It can come as no surprise to Boeing that it could be sued in the county where the company moved its world headquarters. Courts have concluded, however, that the location of corporate headquarters has limited utility in a *forum non conveniens* analysis. The reason is that the location of a corporate headquarters or identifying a principal place of business in Illinois does not mean that Illinois is a convenient venue for litigation. *See Gridley v. State Farm Mut. Auto. Ins. Co.*, 217 Ill. 2d 158, 172 (2005) ("the fact that a corporation does business within a county in Illinois does not affect the *forum non conveniens* analysis"), *citing Vinson*, 144 Ill. 2d 306. Since the location of corporate headquarters does not, by itself, provide a reliable indicator of convenience, this court must look for other facts linking the plaintiffs' personal injuries in New York with Boeing's domicile in Chicago. The record in this regard is sparse.

There is nothing in the record suggesting Chicago-based Boeing executives proximately caused the November 25, 2019 contaminated air event at JFK airport. Put another way, there is nothing in the record suggesting that any current Chicago-based Boeing executive hired, trained, directed, or supervised the design and manufacturing of the air system 40 years ago at Boeing's Washington facilities. Rather, the complaint and the existing record establish that the event resulted from the decades-old design

9

and production of an allegedly deficient air system and Boeing's subsequent failure to alter the system.

It also bears repeating that Boeing is a Delaware corporation, headquartered in Chicago, with its primary design and production facilities in the Puget Sound region. Boeing does not operate in Cook County, or anywhere else in Illinois, any design, production, or manufacturing facilities, let alone ones similar to those in Washington. Those facts echo *Dawdy*. There, the local interest factor weighed strongly against the plaintiff's chosen forum of Madison County because the defendant-railroad – a Delaware corporation with its principal place of business in Omaha, Nebraska – merely conducted business and maintained a post office box in the county. *See* 207 Ill. 2d at 182. As noted above, but bears repeating: "[i]f the fact that the defendant conducts business, or maintains a post office box, in the plaintiff's chosen forum were dispositive . . . 'plaintiff's choice would be elevated to the stature of a dispositive consideration, which is patently not to be allowed.'" *Id., quoting Franklin*, 150 Ill. App. 3d at 347.

In sum, this dispute is localized either in New York, where the air system allegedly injured the plaintiffs, or in Washington, where Boeing designed and produced the allegedly deficient air system. This factor strongly favors a dismissal.

B.    Unfairness of Imposing Expense and Burden on a County with Little Connection to the Litigation

This public factor often follows from the first, and it does in this instance. As Illinois courts have consistently recognized, litigation imposes various costs on the courts and the public. As explained:

> [j]ury duty constitutes a burden to the citizens of a county who must serve on the jury. The county in which the trial is held is financially burdened by the payment of jurors' fees and by providing court personnel and court facilities. The court system of this State is also burdened by the necessity to provide judicial personnel and the machinery for appellate review.

*Wieser v. Missouri P.R. Co.*, 98 Ill. 2d 359, 371 (1983). As another court concluded: "Illinois taxpayers should not be obligated to pay for litigation which is unrelated to Illinois any more than Illinois citizens should be burdened by sitting on juries in these cases." *Satkowiak v. Chesapeake & Ohio R. Co.*, 106 Ill. 2d 224, 232 (1985). *See also Fennell*, 2012 IL 113812, ¶ 46.

Cook County residents have some interest in this litigation given that it concerns a local corporation. Beyond that fact, it is difficult to identify any other interest Cook County residents have in this case. The plaintiffs are United Kingdom residents allegedly injured in New York. Boeing designed and produced the allegedly deficient air bleed system in Washington. It is an unnecessary burden to impose on Cook County residents and its courts a case that is so tangentially related to this venue.

Given the absence of any meaningful connection between the plaintiffs and Cook County, this factor also strongly favors a dismissal.

C.    Administrative Difficulties

This public factor typically prompts litigants to latch on to sparse and generalized court statistics and then apply them to the specifics of the case, always, of course, in their own favor. Perhaps for that reason alone, court congestion, by itself, is considered a relatively insignificant factor in a *forum non conveniens* analysis. *See, e.g., Dawdy*, 207 Ill. 2d at 181; *Guerine*, 198 Ill. 2d at 517; *Langenhorst*, 219 Ill. 2d at 451 ("When deciding *forum non conveniens* issues, the trial court is in the better position to assess the burdens on its own docket."). At the same time, the Supreme Court has repeatedly recognized that it is appropriate to consider the congested docket conditions of the plaintiff's chosen forum. *See Dawdy*, 207 Ill. 2d at 181; *Wieser*, 98 Ill. 2d at 372-73 (collecting cases). Under *Dawdy*, a review of the most recent Annual Report of the Illinois Courts is the appropriate reference. 207 Ill. 2d at 181.

The 2020 report for law division cases valued at more than $50,000 and resolved by jury verdict shows that Cook County disposed of 69 cases in 28.6 months. Administrative Office of the Illinois Courts, *Annual Report of the Illinois Courts, Statistical Summary*, at 81. Boeing supplied similar information for the King County superior court. According to that court's available information, parties filed 52,889 cases in 2019, nearly all of which were disposed of within 24 months. It should be noted that current statistics for the counties may be substantially different given the last two years of limited court activity. Nonetheless, the information presented above leads this court to conclude, as have so many others, that court congestion is, by itself, not a particularly insightful factor. The difference between the two jurisdictions is only four months, a slight difference that does not tip the balance in either direction. This factor is neutral.

11

III.    Balance of Factors

A review of the *forum non conveniens* factors shows that five favor dismissal, including the most important private factors—location of parties and witnesses—and public factors—deciding where a controversy is localized. Four factors are neutral while none favors maintaining the lawsuit in Cook County.  The balance of factors in this case strongly supports the dismissal of this lawsuit.

Conclusion

For the reasons presented above, it is ordered that:

1.    The defendant's motion to dismiss is granted;
2.    This case is dismissed in this jurisdiction with prejudice; and
3.    This dismissal is subject to Illinois Supreme Court Rule 187(c)(2) for purposes of re-filing and potential reinstatement before this court.

John H. Ehrlich, Circuit Court Judge

Judge John H. Ehrlich

JAN 04 2022

Circuit Court 2⁰⁻⁻

12